In re TRANSCON LINES, Debtor.

Leonard L. GUMPORT, Trustee of the Bankruptcy Estate of Transcon Lines, Plaintiff,

v.

INTERSTATE COMMERCE COMMISSION, an agency of the United States of America, Defendant.

Bankruptcy No. LA 90–10680–RR.
Adv. No. 92–04510.

United States Bankruptcy Court,
C.D. California.

Oct. 9, 1992.

Patrick L. Shreve, Marjorie S. Steinberg, Members of Tuttle & Taylor, A Law Corp., Los Angeles, Cal., Joseph L. Steinfeld, Jr., Sims, Walker & Steinfeld, Washington, D.C., for plaintiff Leonard L. Gumport, Chapter 7 Trustee of the Bankruptcy Estate of Transcon Lines.

Patricia Burke Kuhlmann, Charles E. Wagner, Office of Compliance & Consumer Assistance, I.C.C., Robert S. Burk by Federal Exp., Henri F. Rush, Ellen D. Hanson, Evelyn G. Kitay, Office of General Counsel, I.C.C., Washington, D.C., for I.C.C.

Anthony L. Steinmeyer, Robert M. Loeb, Civil Div., Dept. of Justice, Washington, D.C.

Marcy J.K. Tiffany, Charmayne Mills, Brian Fittipaldi, U.S. Trustee, Los Angeles, Cal.

## FINDINGS OF FACT AND CONCLUSIONS OF LAW RE TRUSTEE'S MOTION FOR PRELIMINARY AND PERMANENT INJUNCTIVE RELIEF AND DECLARATORY JUDGMENT

ROBIN L. RIBLET, Bankruptcy Judge.

On September 21, 1992 at 9:00 a.m. in Courtroom 1345 of the Roybal Building,

255 East Temple Street, Los Angeles, California 90012, there came on for hearing pursuant to an order shortening time the Motion of Leonard L. Gumport, Chapter 7 Trustee of the bankruptcy estate of Transcon Lines ("Trustee" and "Transcon," respectively), for Preliminary and Permanent Injunctive Relief and Declaratory Judgment ("Trustee's Motion") filed herein on September 11, 1992. Attached to the Trustee's Motion was the Declaration of Leonard L. Gumport ("Gumport Decl.") and the Declaration of James Fox ("Fox Decl."). At that hearing, the Trustee filed with the Court a Request for Judicial Notice with respect to certain pleadings heretofore filed in this case.

On September 18, 1992 Defendant Interstate Commerce Commission ("ICC") filed a responsive pleading titled "Notice of Motion and Motion for Partial Dismissal, Notice of Motion and Motion for Escrow Fund Establishment and Memorandum of Points and Authorities" ("ICC Motion"). The ICC Motion presented no evidentiary matter.

On that same date, the National Industrial Transportation League filed a Motion for Leave to file Memorandum of Points and Authorities as Amicus Curiae in Opposition to the Trustee's Motion, which motion attached such Memorandum of Points and Authorities ("Amicus Memorandum"). Such Memorandum provided no evidentiary matter.

The Court having considered the Trustee's Motion, the ICC Motion (as a responsive pleading) and the Amicus Memorandum, the papers and pleadings filed herein, including the Gumport Declaration and the Fox Declaration, the Request for Judicial Notice and the matters included therein and the arguments of counsel, the Court hereby makes its findings of fact and conclusions of law. An Order hereon is filed concurrently herewith.

### Findings of Fact

1. Prior to its bankruptcy, Transcon Lines was one of the largest less-than-truckload interstate trucking companies in the United States. (Fox Decl. ¶ 2)

2. In May 1990, Transcon Lines became a debtor in bankruptcy when certain of its pension funds filed an involuntary bankruptcy petition against it in this Court. (Fox Decl. ¶ 4). Shortly before that bankruptcy, thousands of employees were terminated and, by early June 1990, approximately 80 employees remained. Fox Decl. ¶ 4. There now remain only two employees and there are no longer any trucking operations. Fox Decl. ¶ 4.

3. Leonard L. Gumport was appointed as Trustee in June 1990. The case was converted to one under Chapter 7 shortly after the Trustee was appointed. Gumport Decl. ¶ 3.

4. Included in the property of the estate at the date of the petition were claims against former shippers for undercharges resulting from what the Trustee contends were illegal discounts off the rates contained in duly filed tariffs given by Transcon to such shippers, including undercharges resulting from putative "contracts" which did not meet applicable statutory or regulatory standards for contract carriage. Gumport Decl. ¶ 4. These claims are hereinafter referred to as "filed rate" claims.

5. The primary asset of the Transcon Lines bankruptcy estate consists of those filed rate claims. Gumport Decl. ¶ 4.

6. In August, 1990, the Trustee, with this Court's approval, employed professionals to pursue these claims. Gumport Decl. ¶ 5.

7. Following a challenge by the Interstate Commerce Commission ("ICC") to certain of the Trustee's collection efforts, the Ninth Circuit Court of Appeals in the case of *Interstate Commerce Commission v. Transcon Lines, Inc.*, 968 F.2d 798 (9th Cir.1992) ("*ICC v. Transcon*"), has upheld the right of the Trustee to pursue claims against shippers under Transcon's tariff providing for the loss of a discounted rate in the event the freight charges were not paid within 90 days ("90–Day–Loss–of–Discount Claims"). The ICC has petitioned for rehearing of that portion of the Ninth Circuit's opinion upholding these claims. The Ninth Circuit has not yet acted on that request. Gumport Decl. ¶ 6.

8. The ICC itself has estimated that on the 90–Day–Loss–of–Discount Claims alone the Transcon estate may recover $23,000,-000. Exhibit 8 to Trustee's Motion (Petition for Rehearing with Suggestion for Rehearing en banc filed by the ICC in *ICC v. Transcon* ).

9. On September 3, 1992 the ICC issued regulations be published at 8 I.C.C.2d 742; 49 C.F.R., §§ 1321 *et seq.* together with an Order, Ex–Parte No. MC–208, "Non–Operating Motor Carriers—Collection of Freight Undercharges" ("ICC Bankruptcy Regulations" and "Ex–Parte Order," respectively).

10. On September 11, 1992 the Trustee filed a complaint herein styled *Leonard L. Gumport, Chapter 7 Trustee of the bankruptcy estate of Transcon Lines v. Interstate Commerce Commission*, Adv. No. 92–04510 ("Trustee's Complaint"), and Motion for Preliminary and Permanent Injunctive Relief and Declaratory Judgment ("Trustee's Motion").

11. The ICC Bankruptcy Regulations purport to prohibit the Trustee from pursuing the 90–Day–Loss–of Discount Claims upheld by the Ninth Circuit in *ICC v. Transcon* and all other filed rate claims, including claims challenging putative "contracts of carriage." In particular, the ICC Bankruptcy Regulations:

(A) Require the Trustee to submit all (or representative examples of) filed rate claims to the ICC for review and approval that such claims are permissible claim;

(B) Prohibit the Trustee from taking any steps to prosecute or pursue his filed rate claims pending such review of such claims by the ICC;

(C) Require the Trustee to notify all shippers against which claims have been made of the ICC Bankruptcy Regulations within sixty days of the effective date of the Regulations; and

(D) Require the Trustee to submit for ICC review all claims heretofore settled in this case.

In the event the ICC concludes that any claims are not "valid, permissible" claims, the Trustee would be prohibited from pursuing such pending claims or, in the case of settled claims, would be required to return settlement monies.

12. The ICC admits that the Bankruptcy Regulations provide no deadline for the ICC's prescreening of claims. ICC Motion at 27.

13. The ICC Bankruptcy Regulations purport to exercise immediate and pervasive control over property of this estate. They require the Trustee to engage in an adult version of "Mother–May–I?" with respect to each step he wishes to take in pursuing his claims against shippers. The filed rate claims are removed entirely from the control of the Trustee pending re ICC's review and for an indeterminate period of time pending the ICC's review; certain claims are subject to be determined adversely as a result of that review and court-approved settlements are subject to being set aside. Without such approval, the Trustee may not serve complaints, conduct discovery, enter into or complete settlements of claims or try cases now pending on this or any other court's docket.

14. The ICC Bankruptcy Regulations may be enforced by civil and criminal penalties. 49 U.S.C. § 11901 *et seq.* Pursuant to the Ex Parte Order, it is clear that the ICC intends to impose personal liability on bankruptcy trustees for such penalties. Exhibit 1 to Trustee's Motion at 758.

15. The Trustee, with this Court's approval, has settled many filed rate cases and claims in this case, including claims attacking putative "contracts of carriage." Gumport Decl. ¶ 14.

16. The amount of cash now available to the estate is less than the amount collected from the settlement of such claims. Fox Decl. ¶ 8.

17. If the Trustee is unable to pursue pending claims, cash flow to the estate will be severely reduced and the ability of the Trustee to administer the estate will be jeopardized. Gumport Decl. ¶ 14.

18. The Transcon estate would be irreparably harmed by the application or enforcement of the Regulations to or against it.

19. Although the ICC Bankruptcy Regulations purport to affect carriers other than those in bankruptcy, it appears from the Ex Parte Order that the Regulations were promulgated specifically for application in this case. See Ex Parte Order at 743 ("We instituted this proceeding because of serious problems arising out of the collection efforts being made by the Transcon and P*I*E trustees, among others."). As such, they are directly violative of the automatic stay.

20. Pursuant to the decision of the ICC dated September 17, 1992, the ICC Bankruptcy Regulations will become effective October 8, 1992. Attachment 1 to ICC Motion.

21. Notice of the Trustee's Motion was reasonable and sufficient under all the circumstances.

22. Any Finding of Fact which is more properly a Conclusion of Law shall be deemed a Conclusion of Law.

### Conclusions of Law

1. This Court has jurisdiction over the matters alleged in the Trustee's Complaint and the Trustee's Motion pursuant to 28 U.S.C. § 1334(b) which provides, "Notwithstanding any Act of Congress that confers exclusive jurisdiction on a court or courts other than the district courts, the district courts shall have original but not exclusive jurisdiction of all civil proceedings arising under Title 11, or arising in or related to case under title 11." Nothing is more intrinsic to a case under title 11 than violations of the automatic stay. Furthermore, because 18 U.S.C. § 1334 refers to "civil proceedings" and not "claims" or "causes of action," it confers jurisdiction on this Court over Trustee's entire complaint.

2. The Administrative Orders Review Act, 28 U.S.C. §§ 2321(a) and 2342(5) (the "Hobbes Act") grants exclusive jurisdiction to the Courts of Appeal over proceedings to enjoin, set aside, suspend or determine the validity of all rules, regulations or final orders of the Interstate Commerce Commission. By reason of 28 U.S.C. § 1334(b) this Court has concurrent juris-diction together with the Courts of Appeals under the Hobbes Act with respect to actions to enjoin, set aside, suspend or determine the validity of the ICC Bankruptcy Regulations. Accordingly, this Court has jurisdiction over the Trustee's Complaint and the relief sought by the Trustee's Motion.

3. The Trustee's claims for freight undercharges, whether the subject of lawsuits pursuant to 49 U.S.C. § 11706 or otherwise, are property of this bankruptcy estate. 11 U.S.C. § 541; In re Crys-en/Montenay Energy Co., 902 F.2d 1098 (2d Cir.1990); In re Best Refrigerated Express, Inc., 1991 Fed.Carr.Cas. (CCH) ¶ 83,-624 (Bkrtcy.D.Neb.1991). The claims may be pursued without an initial determination by the ICC that the rates paid on past shipments were unlawful; the ICC's contentions to the contrary are wrong.

4. In ICC v. Transcon, the Ninth Circuit Court of Appeals has expressly upheld the right of the Trustee to pursue those filed rate claims known as 90–Day–Loss–of–Discount Claims.

5. Under the Supreme Court case of Maislin Industries, U.S., Inc. v. Primary Steel, 497 U.S. 116, 110 S.Ct. 2759, 111 L.Ed.2d 94 (1990), the Trustee is obligated to attempt to collect its filed tariffs against shippers.

6. The automatic stay provided by 11 U.S.C. § 362 applies to all entities. "All entities" includes governmental units. 11 U.S.C. § 362(a); 11 U.S.C. § 101(15).

7. The ICC is a governmental unit and accordingly the automatic stay of § 362 applies to it. It does not have the right to disregard the bankruptcy code. See United States v. Whiting Pools, Inc., 462 U.S. 198, 103 S.Ct. 2309, 76 L.Ed.2d 515 (1983). 11 U.S.C. § 106(c) waives the sovereign immunity of the United States on claims for declaratory and injunctive relief. United States v. Nordic Village, Inc., 503 U.S. ——, 112 S.Ct. 1011, 117 L.Ed.2d 181 (1992); In re Town & Country Home Nursing Services, Inc., 963 F.2d 1146 (9th

Cir.1991). Accordingly, the ICC is subject to the Trustee's claims.

■ 8. The ICC Bankruptcy Regulations purport to exercise immediate and pervasive control over the estate's property and therefore are violative of § 362(a)(3) which prohibits acts "to exercise control over property of the estate."

■ 9. A preliminary injunction enjoining the ICC from applying or enforcing the ICC Bankruptcy Regulations against the Transcon estate, its property or the Trustee is necessary and proper in order to carry out the provisions of the Bankruptcy providing for the stay of acts to control property of the estate.

10. The decision of the United States Supreme Court in the case of *Board of Governors of the Federal Reserve System of U.S. v. MCorp Financial,* 502 U.S. ——, 112 S.Ct. 459, 116 L.Ed.2d 358 (1991) (*"MCorp"*), is inapposite and has no application here.

(A) In *MCorp* there was a statutory scheme, the Federal Institutions Supervisory Act (12 U.S.C. § 1818 et seq.), which expressly precluded court jurisdiction over the agency proceedings at issue in that case. 502 U.S. at ——, 112 S.Ct. at 463, 116 L.Ed.2d at 366. No such statutory scheme exists here: the Interstate Commerce Act expressly gives this court original jurisdiction over the claims which the ICC Bankruptcy Regulations seek to affect (49 U.S.C. § 11706) and the Hobbes Act provides for exclusive jurisdiction in the Court of Appeals for such review (which exclusive jurisdiction is modified by the grant of concurrent jurisdiction to this court in 28 U.S.C. § 1334(b)).

(B) *MCorp* is further distinguishable from the situation here in that there the ongoing, nonfinal administrative proceeding only presented the *possibility* that an order would be entered purporting to exercise control over property of the estate. 502 U.S. ——, 112 S.Ct. 459, 116 L.Ed.2d 358. No Order had yet been entered. *Id.* Here, the ICC's attempt to exercise control over the property of the estate is immediate and pervasive, not merely a possibility. The filed rate claims would be removed entirely from the Trustee's control for an undetermined period of time; certain of those claims may be determined adversely; and court-approved settlements set aside.

11. The ICC Bankruptcy Regulations are an attempt to usurp the original jurisdiction of this Court and to destroy the procedure for referral of matters to the ICC by the courts known as "primary jurisdiction." *See Milne Truck Lines, Inc. v. Makita U.S.A., Inc.,* 970 F.2d 564 (9th Cir. 1992).

■ 12. The automatic stay of 11 U.S.C. § 362 enjoins the application or enforcement of the ICC Bankruptcy Regulations or the Ex Parte Order to or against the ·Transcon estate, any property of the Transcon estate, or the Trustee by the ICC, its successors, assigns, agents, servants, employees, Commissioners and all persons acting in concert or participating with or for it.

■ 13. 11 U.S.C. § 105 gives this Court the power to issue any order "necessary or appropriate" to carry out the provisions of the Code. Pursuant to § 105 this Court may issue an injunction against a federal agency. *NLRB v. Superior Forwarding, Inc.,* 762 F.2d 695 (8th Cir.1985).

■ 14. The Trustee need not show "irreparable" harm as a result of the threatened application or enforcement of the ICC Bankruptcy Regulations in order to be entitled to the relief granted hereby. The threatened violation of the automatic stay is sufficient grounds for the issuance of this injunction.

■ 15. The foregoing notwithstanding, the Trustee has made a sufficient showing of likelihood of success on the merits and irreparable injury to the estate to entitle him to an injunction against the application or enforcement of the ICC's Bankruptcy Rules to or against the estate or its property.

■ 16. Because the application or enforcement of the Bankruptcy Regulations to or against this estate, its property or the

Trustee would violate the automatic stay, the Trustee may disregard such Regulations entirely and such Regulations shall be deemed totally void as to this estate. *See Schwartz v. United States,* 954 F.2d 569 (9th Cir.1992).

17. The request for an escrow of funds contained in the ICC's Motion is also denied as an attempt to control property of this estate.

18. The Court declines at this time to rule on the Trustee's challenge to the validity of the ICC Bankruptcy Regulations under the Interstate Commerce Act or under the United States Constitution (the second and third claims for relief in the Trustee's Complaint) or whether this Court should abstain from ruling on such claims. The Court may consider such issues upon further proceedings herein.

19. This matter is appropriate for summary judgment and the Court will so consider it upon motion of either party.

20. This proceeding is a core proceeding within the meaning of 28 U.S.C. § 157.

21. Pursuant to Bankruptcy Rule 7065, no bond is required of the Trustee in connection with the injunction issued hereby.

22. Notice of the Motion was reasonable under all of the circumstances.

## PRELIMINARY INJUNCTION AND ORDER

WHEREAS, Leonard L. Gumport, Chapter 7 Trustee (the "Trustee") of the bankruptcy estate of Transcon Lines, debtor herein ("Transcon"), having filed his Notice of Motion and Motion for Preliminary and Permanent Injunctive Relief and Declaratory Judgment herein on or about September 11, 1992 ("Trustee's Motion") which Motion sought relief with respect to the cause of action asserted in the complaint herein, filed on the same date ("Trustee's Complaint");

WHEREAS, the Motion came on for hearing before the undersigned pursuant to an Order Shortening Time;

WHEREAS, Defendant Interstate Commerce Commission ("ICC") filed its Notice of Motion and Motion for Partial Dismissal, Notice of Motion and Motion for Escrow Fund Establishment and Memorandum of Points and Authorities on or about September 18, 1992, which motion has been deemed a pleading responsive to the Trustee's Motion ("ICC Motion");

WHEREAS, the National Industrial Transportation League filed a Motion for Leave to File Memorandum of Points and Authorities as Amicus Curiae in Opposition to the Trustee's Motion, which motion attached such Memorandum of Points and Authorities ("Amicus Memorandum");

WHEREAS, the Trustee's Motion came on for hearing before this Court on September 21, 1992 at 9:00 a.m.;

WHEREAS, the Trustee appeared through his counsel of record, Marjorie S. Steinberg of Tuttle & Taylor and Mr. Joseph L. Steinfeld, Jr. of Sims, Walker & Steinfeld, and the ICC appeared through Mr. Henri Rush of the Office of General Counsel and Mr. Charles Stodghill of the United States Department of Justice;

WHEREAS, the Trustee having filed with the Court and served on the parties prior to such hearing a Request for Judicial Notice concerning certain pleadings heretofore filed in this matter by the Trustee and served on the ICC;

WHEREAS, the Court having considered the pleadings, papers and evidence filed in support of the Trustee's Motion and in opposition to the Trustee's Motion, including the ICC Motion and the Amicus Memorandum, and having heard argument of counsel;

WHEREAS, good cause appearing therefor;

IT IS HEREBY ORDERED, ADJUDGED AND DECREED, pending judgment herein or further order of the court;

1. *Preliminary Injunction.* Defendant ICC and its successors, assigns, agents, servants, employees, Commissioners and all persons acting under, in concert or participation with or for it, shall be and hereby are enjoined and restrained from seeking in any way to apply or enforce the regulations denominated "Nonoperating

Motor Carriers–Collection of Undercharges" to be published at 49 C.F.R. Part 1321 (a copy of which is attached to this Order) ("ICC Bankruptcy Regulations"), or any portion thereof, or its Order Ex Parte–No. MC–208 ("Ex Parte Order"), to or against the Transcon estate, to claims or lawsuits which are property of such estate or to Leonard L. Gumport, Trustee of such estate, such ICC Bankruptcy Regulations and Order being violative of the automatic stay provided by 11 U.S.C. § 362(a)(3).

2. *Denial of Request for Escrow.* The Motion of the ICC seeking an escrow of funds obtained from settlements of "filed rate claims" as that term is used in the ICC Motion is denied. Such escrow would also violate the automatic stay of 11 U.S.C. § 362(a)(3) and is unwarranted in this case.

3. *Order Re Trustee Disregard of Bankruptcy Regulations.* The Trustee may disregard the ICC Bankruptcy Regulations and Ex Parte Order and the effect of such Regulations shall be void as to this estate.

4. Pursuant to Bankruptcy Rule 7065, no bond is required for issuance of this Preliminary Injunction.

5. The Court reserves jurisdiction to modify or amend this Preliminary Injunction after notice and a hearing, as the ends of justice may require.

6. The Court finds that notice ·of the hearing on the Trustee's Motion was reasonable and appropriate under all of the circumstances.

7. Findings of Fact and Conclusions of Law in Support of this Preliminary Injunction shall be entered concurrently herewith.

## APPENDIX A

Title 49, Chapter X, of the Code of Federal Regulations, is amended by adding a new Part 1321 to read as follows:

### PART 1321—NONOPERATING MOTOR CARRIERS—COLLECTION OF UNDERCHARGES

Sec.
1321.1  Nonoperating motor carriers—undercharge collection.
1321.2  Intent and scope of rules in this Part.
1321.3  Disavowal of tariff rates.
1321.4  Disavowal of contract carrier charges.
1321.5  Notice to shipper or other party from whom undercharges are sought.
1321.6  Limitation of rules in this Part.
1321.7  Operating carriers.

Authority 49 U.S.C. §§ 10101, 10102, 10321, 10521, 10701, 10702, 10704, 10741, 10743, 10761, 10762, 10764, 10921, 10923, 11144, 11901, 11903, 11904, and 11906; 5 U.S.C. § 553.

§ 1321.1  *Nonoperating motor carriers—undercharge collection.*

Motor carriers, including subsidiaries, subject to the rules in this Part are those that have ceased operation (because of bankruptcy, voluntary liquidation or otherwise) or are ceasing operations. Additionally, the carrier representatives, estates, assigns, or others who may assert undercharge claims purportedly founded on the regulatory requirements of the Interstate Commerce Act or Commission regulations, are subject to the rules in this Part at all stages of the collection process, including the initial phase of rebilling. These regulations extend to pending claims (including claims already pending in court), settled claims of carriers that have not terminated their existence, and future claims. For purposes of these regulations, the term "shipper" applies broadly to anyone receiving undercharge claims (*i.e.* brokers and freight forwarders as well as shippers). The carrier or its representative must file its claims at this Commission prior to, or concurrently with, a court action, except during a 30–day transition phase extending from the effective date of these regulations. The carrier or its representative must certify that all underlying claims are supported with the appropriate underlying documents in the carrier's possession. The carrier may not make any offer to settle prior to the Commissions's initial determination that the carrier may pursue the undercharge claims. However, the regulations are not intended to preclude a carrier from filing a court action, when necessary to preserve its claim from being barred by the statute of limitations, so long as it does not further prosecute the claim until it has obtained Commission approval to do so.

§ 1321.2  *Intent and scope of rules in this Part.*

The rules in this Part provide that a nonoperating motor carrier may not unilaterally disavow the tariff rate under which a past shipment moved, or the contract if the shipment moved as contract carriage, without the Commission's preliminary review and approval of the contemplated undercharge claim as a permissible claim.  At the prior review stage, the Commission will not address the ultimate merit of the undercharge claim, but merely determine whether or not there is a valid, colorable undercharge claim which may be asserted.  Our approval of the claim at that stage is not intended to limit a shipper's defenses to the claim, nor affect a court's obligation to refer any regulatory issues that are raised to us, under the doctrine of primary jurisdiction, if and when a collection suit is filed.  Rather, these rules are designed merely to screen out and prevent undercharge claims that lack a legitimate or cognizable basis, so that shippers are not required to defend themselves against baseless claims.

§ 1321.3  *Disavowal of tariff rates.*

A person subject to this Part seeking to rebill for a past shipment based on the substitution of a different (higher) tariff rate for the tariff rate billed at the time of shipment, whether on lawfulness, reasonableness, or applicability grounds, must obtain a Commission preliminary review and approval of a contemplated undercharge claim as a permissible claim, before attempting to substitute different tariff rates.  However, this does not mean that the person must submit for approval each individual claim.  Rather, in the event of multiple claims with the same basis, we will review representative claims for each class of claims upon which the person seeks to collect undercharges.

§ 1321.4  *Disavowal of contract carrier charges.*

A person subject to this Part seeking to rebill for a past shipment based on the substitution of a common carrier tariff rate for contract carriage charges originally billed, must obtain Commission preliminary review and approval before attempting to substitute a (higher) tariff rate.  However, this does not mean that the person must submit for approval each individual claim.  Rather, in the event of multiple claims with the same basis, we will review representative claims for each class of claims upon which the person seeks to collect undercharges.

§ 1321.5  *Notice to shipper or other party from whom undercharges are sought.*

For *pending* claims where the shipper has already been notified of the rebilling, a person subject to this Part seeking undercharges that are covered by these rules must notify the shipper in writing, within 60 days of the effective date of these regulations, that:

(a) The Commission will give a preliminary review of the basis for the undercharge claims under § 1321.3 or § 1321.4 (as appropriate);

(b) The person cannot make a settlement offer prior to the Commission's initial determination that the undercharge claims may be pursued;  and

(c) The person must submit to the Commission for approval a sample letter or notice providing the notification required by paragraphs (a) and (b) of this section.

§ 1321.6  *Limitation of rules in this Part.*

The provisions of this Part do not apply to rebillings that:

(a) Seek to collect the (lowest applicable) tariff rate where the rate originally billed was not contained in a tariff on file with the Commission;  or

(b) Seek to collect the unpaid portion of the originally billed tariff rate or contract charges, together with any interest or late payment charges that are permitted by Commission regulations.

§ 1321.7  *Operating carriers.*

The rules in this Part do not apply to operating carriers including those which might be struggling to stay in business.  However, they do apply to situations where a carrier is conducting only a token amount of service in order to avoid the operation of the rules.  In such a situation, the Commission may determine *sua sponte* (or at the request of a shipper) after notice and opportunity to respond by the carrier that the motor carrier is within the reach of these rules.