**In re TRANSCON LINES, Debtor.**

**Leonard L. GUMPORT, Chapter 7 Trustee, Plaintiff,**

**v.**

**INTERSTATE COMMERCE COMMISSION, Defendant.**

**Bankruptcy No. 93–22207–DN. Adv. No. 92–04510.**

United States Bankruptcy Court, C.D. California.

Feb. 1, 1995.

**230**

Patrick L. Shreve, Marjorie S. Steinberg, Gregory D. Schetina, Sung H. Shin, Tuttle & Taylor, Los Angeles, CA, Joseph L. Steinfield, Jr., Robert B. Walker, John T. Siegler, Sims, Walker & Steinfield, P.C., Washington, DC, for plaintiff Leonard L. Gumport, Trustee.

Frank W. Hunger, Asst. Atty. Gen., J. Christopher Kohn, Charles D. Stodghill, Andrea Horowitz Handel, Dept. of Justice, Civ. Div., Washington, DC, Nora Manella, U.S. Atty., Kathryn Ritchie, Asst. U.S. Atty., Los Angeles, CA, for Dept. of Justice.

Robert S. Burk, Gen. Counsel, Henri F. Rush, Deputy Gen. Counsel, Ellen D. Hanson, Sr. Assoc. Gen. Counsel, Virginia Strasser, I.C.C., Washington, DC, Gregory J. Morrow, I.C.C., Los Angeles, CA, for I.C.C.

Leonard L. Gumport, Trustee, Hufstedler, Kaus & Ettinger, Los Angeles, CA, for Transcon Lines.

Marcy J.K. Tiffany, U.S. Trustee, Brian D. Fittipaldi, Attorney–Advisor, Office of U.S. Trustee, Los Angeles, CA, for Office of U.S. Trustee.

## MEMORANDUM DECISION

ROBIN L. RIBLET, Bankruptcy Judge.

Leonard Gumport, chapter 7 trustee of the estate of Transcon Lines, has brought a motion under the Equal Access to Justice Act, 28 U.S.C. § 2412(d), seeking to recover attorney's fees and costs incurred in litigating the legality of certain regulations issued by the Interstate Commerce Commission. Based upon the following discussion, the court finds the award of fees appropriate under the circumstances of this case.

### I. FACTS

Prior to bankruptcy Transcon Lines ("Transcon") operated a large interstate trucking business. On May 1, 1990, an involuntary petition was filed against Transcon by certain of its pension funds. On May 21, 1990, Transcon consented to the entry of an order for relief under chapter 11. Leonard Gumport was appointed chapter 11 trustee in June, 1990, and upon his request the case was converted to chapter 7 on July 10, 1990. Gumport was appointed chapter 7 trustee on July 17, 1990.

Gumport promptly set about collecting what he perceived to be the primary assets of the Transcon estate, i.e., claims for unpaid freight charges and claims for undercharges allowed by Transcon in violation of the filed rate doctrine which requires that regulated carriers charge only those rates contained in filed tariffs. The ICC responded by seeking to enjoin the Trustee's collection actions. Gumport prevailed on a summary judgment motion before the district court, which was affirmed in part and reversed in part by the Ninth Circuit Court of Appeals. *Interstate Commerce Commission v. Transcon Lines,* 990 F.2d 1503 (9th Cir.1992), *vacated in part and remanded,* —— U.S. ——, 113 S.Ct. 2955, 125 L.Ed.2d 657 (1993), *on remand,* 9 F.3d 64 (9th Cir.1993), *cert. granted,* —— U.S. ——, 114 S.Ct. 1536, 128 L.Ed.2d 189 (1994), *judgment reversed,* —— U.S. ——, 115 S.Ct. 689, 130 L.Ed.2d 562 (1995). As a result of the appeals, the action of the Supreme Court

and reconsideration by the Ninth Circuit in light of intervening precedent, the Trustee was left, subject to the Supreme Court's second grant of certiorari, with the ability to collect on unpaid bills and "loss of discount" claims.[1]

Undaunted by its setback at the Ninth Circuit, the ICC took collateral action to thwart the Trustee's collection efforts. On August 26, 1992, the Commission adopted regulations restricting the ability of nonoperating carriers to enforce certain claims against shippers for undercharges. Ex Parte No. MC–208: Nonoperating Motor Carriers—Collection of Undercharges, 8 I.C.C.2d 742 (1992) (the "MC–208 Rules").[2] The MC–208 Rules required the Commission's review and consent before a claim could be made against a shipper, including loss of discount claims. The Rules contained no deadline for the Commission's prescreening of claims, allowing collection actions to remain in limbo indefinitely. In addition, both personal and criminal liability could be imposed upon bankruptcy trustees for violations of the MC–208 Rules.

The Trustee responded by initiating an adversary proceeding against the Commission, seeking to enjoin enforcement of the Rules on a number of bases. On October 9, 1992, this court granted a preliminary injunction in favor of the Trustee on the grounds that the MC–208 Rules violated the automatic stay of 11 U.S.C. § 362(a). *See In re Transcon Lines (Gumport v. Interstate Commerce Commission)*, 147 B.R. 770, 774–77 (Bankr.C.D.Cal.1992) (*"Gumport v. ICC"*). Specifically, this court found that the Commission's enactment of the MC–208 Rules prevented the Trustee from pursuing the Loss of Discount Claims, which constituted an attempt to control property of the estate, in violation of section 362(a)(3).

On December 18, 1992, an order was entered permanently enjoining the Commission from enforcing the MC–208 Rules. The

Commission then appealed this court's decision to the Bankruptcy Appellate Panel of the Ninth Circuit. On March 19, 1993, during the pendency of the appeal, the Third Circuit Court of Appeals, in an action challenging the MC–208 Rules on behalf of various bankruptcy estates (including Transcon) and nonoperating carriers, held that the ICC had exceeded its statutory authority under the Interstate Commerce Act ("ICA") in enacting the Rules and set them aside. *White v. United States*, 989 F.2d 643 (3rd Cir.1993). The Commission did not appeal the *White* decision.

The Commission next filed a request with the Bankruptcy Appellate Panel to dismiss the appeal of this court's decision and a motion to vacate the order which had been entered earlier. The Trustee joined the Commission's request for dismissal but opposed the motion to vacate the order. On August 11, 1993, the Bankruptcy Appellate Panel entered an order dismissing the appeal but denying the Commission's motion to vacate the order. As a result, this court's earlier judgment is now final.

The Trustee now seeks to invoke the Equal Access to Justice Act ("EAJA"), 28 U.S.C. § 2412(d), in order to recover $42,-844.04 in attorney's fees and $4323.80 of costs incurred in litigating the validity of the MC–208 Rules in *Gumport v. ICC*.

## II. DISCUSSION

The main issues presented by the Trustee's motion and the Commission's response include: (1) whether the bankruptcy court has jurisdiction to make an award under the EAJA; (2) whether the Trustee qualifies as a party entitled to recover fees and costs under the EAJA; and (3) whether an otherwise lawful award is inappropriate based upon the existence of special circumstances or substantial justification for the Commission's actions.

---

1. Although the Interstate Commerce Commission ultimately prevailed on the merits in *Interstate Commerce Commission v. Transcon Lines,* that decision does not affect the Trustee's rights to contest "temporary rules" and to seek fees for related legal services to the bankruptcy estate,

issues which are addressed by the remainder of this opinion.

2. The MC–208 Rules were adopted under the authority of the Interstate Commerce Act, 49 U.S.C. §§ 10101–11917.

A. *Jurisdiction of the Bankruptcy Court*

The EAJA provides, in pertinent part:

A court shall award to a prevailing party other than the United States fees and other expenses ... incurred by that party in any civil action ... brought by or against the United States *in any court* having jurisdiction of that action, unless the court finds that the position of the United States was substantially justified or that special circumstances make an award unjust.

28 U.S.C. § 2412(d)(1)(A) (emphasis added).

It is the initial position of the Commission that this court has no jurisdiction even to consider the Trustee's motion. Relying upon decisions of the Eleventh Circuit, the Commission argues that the phrase "any court" does not include a bankruptcy court. In *Bowen v. Commissioner of Internal Revenue*, 706 F.2d 1087 (11th Cir.1983), and *In re Davis*, 899 F.2d 1136 (11th Cir.), *cert. denied sub nom., Gower v. Farmers Home Admin.*, 498 U.S. 981, 111 S.Ct. 510, 112 L.Ed.2d 522 (1990), the Eleventh Circuit found that since bankruptcy courts are not Article III courts or a "court of the United States" as defined in 28 U.S.C. § 451,[3] they do not have jurisdiction to make an award under the EAJA.

Although the Ninth Circuit has not addressed this issue directly,[4] a majority of courts have found that a bankruptcy court has jurisdiction to award fees under § 2412(d)(1)(A). In *O'Connor v. United States Department of Energy*, 942 F.2d 771 (10th Cir.1991), the Tenth Circuit Court of Appeals recognized the decisions of the Eleventh Circuit and met them head on. The Court recognized the overall purpose of the EAJA "is to place the private litigant and the United States on equal footing as regards the award of costs to the prevailing party in litigation involving the government." *Id.* at 773. It found that the statutory purpose would be furthered by allowing the court most familiar with the underlying dispute to determine whether fees are warranted. The Court also found the language of the statute to be "plain, simple and unambiguous," rendering unnecessary a judicial inquiry into the legislative history. *Id.* at 773. Quite simply, had Congress intended to limit jurisdiction under the EAJA to "any court of the United States," it could have done so. *Id.* Accordingly, a bankruptcy court is included as "any court" and has the power to make a fee award. *Id.*

The *O'Connor* decision has been followed in *In re Shafer*, 146 B.R. 477, 481 (D.Kan. 1992), *modified* 148 B.R. 617 (D.Kan.1992), and *In re Tom Carter Enterprises, Inc.*, 159 B.R. 557, 561 (Bankr.C.D.Cal.1993). *See also In re Esmond*, 752 F.2d 1106 (5th Cir.1985), *In re Newlin*, 29 B.R. 781 (E.D.Pa.1983) and *In re Hagan*, 44 B.R. 59 (Bankr.D.R.I.1984), all of which predate *O'Connor* and in all of which the bankruptcy court's jurisdiction to award fees under the EAJA was implicit.

■ The fact that § 2412(d)(2)(F) specifically includes the United States Court of Federal Claims and the United States Court of Veterans Appeals within the definition of "court" does not militate in favor of a narrow definition of "court." That provision, at least with respect to the United States Court of Federal Claims, has been present in the statute since 1985, and has not caused the majority of courts any hesitation in also including bankruptcy courts within the definition.[5] Moreover, under general rules of construction the terms "include" and "including" are not limiting. *American Surety Co. v. Marotta*, 287 U.S. 513, 517, 53 S.Ct. 260, 262, 77 L.Ed. 466 (1933) (use of "include" generally indicates extension or enlargement rather than exclusion or limitation).

---

**3.** 28 U.S.C. § 451 defines a "court of the United States" as "the Supreme Court of the United States, courts of appeals, district courts constituted by chapter 5 of this title, including the Court of International Trade and any court created by Act of Congress, the judges of which are entitled to hold office during good behavior."

**4.** *See In re Cascade Roads, Inc.*, 34 F.3d 756, 767–68, n. 12 (9th Cir.1994), wherein the Ninth Circuit recognized the issue but specifically declined to express an opinion because under the facts presented the district court rather than the bankruptcy court had invoked EAJA to sanction the United States.

**5.** Section 2412(d)(2)(F) was amended in 1992 to add the United States Court of Veterans Affairs. Pub.L. No. 102–572, § 506(a) (1992).

Based upon the foregoing, I join those courts adopting the reasoning of *O'Connor* and find that this bankruptcy court does have jurisdiction to consider the Trustee's motion.

## B. *Qualifications for Recovery Under the EAJA*

In order to recover under the EAJA, the Trustee must establish that: (1) he is a "prevailing party" in the action for which the fees are sought, § 2412(d)(1)(A); (2) his request is timely as having been filed within 30 days of final judgment in the action, § 2412(d)(1)(B); and (3) he meets certain eligibility requirements, § 2412(d)(2)(B). The Trustee has satisfied all of those requirements.

He is indisputably a "prevailing party," as he obtained summary judgment and a permanent injunction against the ICC barring enforcement of the MC–208 Rules. The Commission does not argue otherwise.

Nor does the Commission contest that the Trustee's motion is timely. "The trustee has now filed a timely application for attorney's fees and expenses under EAJA, 28 U.S.C. § 2412(d)." *See* Memorandum of Points and Authorities of the Interstate Commerce Commission in Opposition to Application for Costs and Attorneys' Fees Under the Equal Access to Justice Act at 5, *Gumport v. ICC* (Adv. No. 92–04510).

A genuine dispute does arise between the parties, however, as to whether the estate qualifies under § 2412(d)(2)(B) as an organization, "the net worth of which did not exceed $7,000,000 at the time the civil action was filed and which had not more than 500 employees." The Trustee's Declaration filed in conjunction with his motion establishes that at all times since the commencement of this case and at the commencement of his injunctive action against the Commission, the net worth of the estate of Transcon Lines was below $7,000,000 and the number of employees was fewer than 500. The Commission does not contest these facts.

The Commission takes issue with the Trustee's contention that the estate is an "organization" within the meaning of § 2412(d)(2)(B). Both sides concur that only one court has addressed the issue of whether a trustee in bankruptcy can qualify as a party entitled to recover fees, *In re Davis,* 899 F.2d 1136 (11th Cir.1990), which holds that a trustee in bankruptcy may not so qualify. The Court of Appeals in *Davis* rejected the argument raised by the trustee there, and again argued by the Trustee herein, that the bankruptcy estate fits within the meaning of the term "organization." Rejecting the broad definition of that term as found in Black's Law Dictionary, the Court preferred to limit the definition to "a group of people that has a more or less constant membership, a body of officers, [and] a purpose." *Id.* at 1144 (quoting Webster's Third New International Dictionary 1590 (1976)). It reasoned that this narrow reading of "organization" is more consistent with its previously announced principle that "waivers of sovereign immunity, as EAJA is, are to be construed narrowly and in favor of the sovereign." *City of Brunswick v. United States,* 849 F.2d 501, 503, n. 4 (11th Cir.1988), *cert. denied,* 489 U.S. 1053, 109 S.Ct. 1313, 103 L.Ed.2d 582 (1989). It further reasoned that the real parties-in-interest were the individual creditors, not the estate, and if fees were not awarded against the government they would pay those fees. *Davis,* 899 F.2d at 1144. Thus, if the individual creditors could not qualify as parties entitled to recover fees under § 2412(d)(2)(B), neither could the trustee in bankruptcy as their representative. *Id.*

Under this rationale, in *In re Brickell Inv. Corp.,* 922 F.2d 696, 703 (11th Cir.1991), the Eleventh Circuit has held a debtor-in-possession qualifies as a party, as he/she/it retains its pre-bankruptcy status as a corporation, partnership or individual and continues as such.

This view of bankruptcy assumes that chapter 11 cases always contemplate a reorganization and entities entering chapter 7 are always defunct. Reality is not so simple, however. Bankruptcy Code § 1123(b)(4) provides that a plan may "provide for the sale of all or substantially all of the property of the estate, and the distribution of the proceeds of such sale among holders of claims or interests." This device is known as

a liquidating plan and was specifically contemplated by Congress in enacting the Bankruptcy Reform Act of 1978. *See* H.R.Rep. No. 595, 95th Cong., 1st Sess. 407 (1977); S.Rep. No. 989, 95th Cong., 2d Sess. 119–120 (1978).

■ The chapter 7 trustee is charged by statute with marshaling and liquidating the assets of the estate. 11 U.S.C. § 704(1). This is to be done "as expeditiously as is compatible with the best interests of parties in interest." *Id.* The Code authorizes that under appropriate circumstances the trustee may even operate the debtor's business for a limited period, *see* § 721, thereby allowing for the possibility of a sale of the business as a going concern. *See In re Heissinger Resources Ltd.,* 67 B.R. 378, 384 (C.D.Ill.1986). Thus, it is permissible and even contemplated by the Bankruptcy Code that a debtor-in-possession may liquidate itself piecemeal and distribute its assets to creditors and equity holders according to their statutory priority while a chapter 7 trustee may preserve the debtor's business enterprise as a going concern. Are courts to allow debtors-in-possession standing under § 2412(d)(2)(B) only when they "reorganize"? If so, when is that determination to be made, only after a plan has been filed and the debtor-in-possession has committed to reorganization? In that case the debtor-in-possession may lose standing because it is unable to qualify within the statute's thirty-day limitation for filing requests for fee awards.

Similarly, a reorganization may contemplate a merger with or sale of the debtor's business to another entity. This type of reorganization is authorized, 11 U.S.C. § 1123(a)(5)(B), (C), while the same result is authorized to the chapter 7 trustee by 11 U.S.C. § 721. This court can find no rational basis for allowing standing in the first instance but not in the second.

The Eleventh Circuit's analysis also loses sight of the fact that the commencement of a bankruptcy case under any chapter creates an estate consisting of all legal and equitable interests of the debtor as of the commencement of the case. 11 U.S.C. § 541(a). In a chapter 7 case that estate is administered by a trustee, while a chapter 11 estate may be administered by a debtor-in-possession or trustee. In either case the administering entity is the representative of the estate and the estate is subject to the conflicting claims of the creditors and equity holders. The distinction described by the Eleventh Circuit in its *Davis* and *Brickell* decisions is illusory.

■ Finally, the purpose of the EAJA will be furthered by including the Trustee, on behalf of the estate, within the meaning of "party." That purpose, as articulated in *O'Connor,* is "to encourage individuals and small businesses to challenge adverse government action notwithstanding the high cost of civil litigation." *O'Connor,* 942 F.2d at 774; *see also* H.R.Rep. No. 99–120, 99th Cong., 1st Sess. 4 (1985). Without access to the EAJA, a trustee in bankruptcy faced with unjustified governmental action is placed in the dilemma of having to choose between opposing that action, and thereby draining the limited assets of the estate, or allowing the government to assert its unjustified position without opposition. Either way, he could be criticized for breaching his fiduciary duties. Who more than the representative of an insolvent estate seeking to maximize the recovery for creditors needs access to the courts to challenge unjustified governmental action without the attendant intimidating specter of overwhelming attorney's fees? The Trustee is eligible to recover under the EAJA.

### C. *Does Substantial Justification Render an Award Unjust?*

■ The EAJA provides that a court may award attorney's fees and costs to a prevailing party in an action involving the government unless the court finds that the government's position was "substantially justified or that special circumstances make an award unjust." 28 U.S.C. § 2412(d)(1)(A). The government has the burden of demonstrating that its position was substantially justified or the existence of any special circumstances. *See Kali v. Bowen,* 854 F.2d 329, 332 (9th Cir.1988); *Petition of Hill,* 775 F.2d 1037, 1042 (9th Cir.1985). In analyzing whether the government's position is substantially justified, the court must consider the "totality of the circumstances," examin-

ing both the government's litigating position as well as the underlying action or conduct upon which the litigation is based. *See Wilderness Soc'y v. Babbitt,* 5 F.3d 383, 388 (9th Cir.1993); *Abela v. Gustafson,* 888 F.2d 1258, 1264 (9th Cir.1989); *League of Women Voters v. FCC,* 798 F.2d 1255, 1258 (9th Cir. 1986).

■ The government's position is substantially justified when both the nature of the underlying government action at issue and the validity of the position asserted by the government in court have a reasonable basis in law and fact. *Pierce v. Underwood,* 487 U.S. 552, 565, 108 S.Ct. 2541, 2549–51, 101 L.Ed.2d 490, 503 (1988); *Wilderness Soc'y,* 5 F.3d at 388; *League of Women Voters,* 798 F.2d at 1257; *Foster v. Tourtellotte,* 704 F.2d 1109, 1112 (9th Cir.1983) (per curiam). In evaluating the Commission's actions, the court must examine the totality of the circumstances, including both the Commission's litigation position and the underlying action that led to the litigation being instigated. *Rawlings v. Heckler,* 725 F.2d 1192, 1195–96 (9th Cir.1984).

Notwithstanding the fact that all courts that have considered the MC–208 Rules have found them to be invalid, the Commission argues that its action in promulgating those Rules was substantially justified on the basis that it addressed issues of first impression in creating a review procedure which it reasonably believed to be lawful under then existing legal precedents. The two grounds on which the Rules have been discredited are: 1) their promulgation and intended enforcement constituted a pervasive and immediate exercise of control over property of the estate, blatantly violating 11 U.S.C. § 362(a)(3), *Gumport v. ICC,* 147 B.R. 770, 775 (Bankr. C.D.Cal.1992); *In re Bulldog Trucking, Inc.,* 150 B.R. 912, 915 (W.D.N.C.1992); and 2) by the promulgation of the MC–208 Rules the Commission sought to divest the courts of original jurisdiction to adjudicate undercharge claims, thereby violating the clear language of § 11706(a) of the Interstate Commerce Act, *White v. United States,* 989 F.2d 643 (3d Cir.1993).

*(1) Violation of the Automatic Stay*

■ While not conceding that its proposed Rules violated the automatic stay, the Commission contends that it reasonably relied on *Board of Governors of the Federal Reserve System of the United States v. MCorp Financial, Inc.,* 502 U.S. 32, 112 S.Ct. 459, 116 L.Ed.2d 358 (1991), in believing that administrative proceedings such as its contemplated review procedure do not violate the automatic stay. It is clear, however, that *MCorp* does not support the Commission's position and its reliance on the capacious reading given to the Supreme Court's decision was unreasonable. The holding there was that the Federal Reserve Board's ongoing administrative proceedings against the debtor did not violate Bankruptcy Code § 362(a)(1) (prohibiting the commencement or continuation of a judicial administrative or other proceeding against the debtor which was or could have been commenced before the bankruptcy case) as they were excepted by section 362(b)(4) as a proceeding by a governmental unit to enforce its police or regulatory power. At issue here is section 362(a)(3) which is not the subject of limitation under section 362(b). In fact, the Supreme Court in *MCorp* observed that "(i)f and when the Board's proceedings culminate in a final order, and if and when judicial proceedings are commenced to enforce such an order, then it may well be proper for the Bankruptcy Court to exercise its concurrent jurisdiction under 28 U.S.C. § 1334(b)." 502 U.S. at 41, 112 S.Ct. at 464. The Supreme Court merely noted in *MCorp* that any contemplation of section 362(a)(3) was premature. Furthermore, Congress had provided exclusive jurisdiction to the Board with references to the proceedings undertaken in *MCorp,* divesting the courts of any ability to affect the proceeding other than through the statue's specific procedure for judicial review. *See* 12 U.S.C. §§ 1818(a)–(i). The ICC lacks any analogous statutory vesting of original and exclusive adjudicative jurisdiction in the Commission.

*(2) Statutory Authority Exceeded*

■ The MC–208 Rules, by purporting to confer upon the Commission the power to

determine the validity of undercharge claims, represented a blatant attempt to usurp to itself the original jurisdiction of the courts. The ICC knew from the outset that it was without legal authority to do so. Indeed, the ICC has long conceded that it is without power to decide overcharge or undercharge claims, or decree reparations for operating carriers. *See e.g., Reiter v. Cooper,* 507 U.S. ——, 113 S.Ct. 1213, 122 L.Ed.2d 604 (1993); *Ex Parte No. 249: Informal Procedure for Determining Motor Carrier and Freight Forwarder Reparations,* 335 I.C.C. 403 (1969); *Ex Parte No. MC–177: National Industrial Transportation League, Petition to Institute Rulemaking on Negotiated Motor Common Carrier Rates,* 3 I.C.C.2d 99 (1986). In *White v. United States,* the Third Circuit held that the MC–208 Rules were adopted in excess of the Commission's statutory authority and set the Rules aside. The Third Circuit observed that it did "not find any statutory authority to warrant the adoption of the MC–208 Rules," *see* 989 F.2d at 649, that the Commission had attempted to arrange "a detour around both the courts' original jurisdiction and the applicable *de novo* standard of review," *see id.* at 648, and that the Commission's own arguments "only underscore[ ] the inappropriateness of the process, which gives the Commission both the role of judge and the role of adversary." *Id.* at 649.

### (3) *Special Circumstances*

 When the Commission first proposed the MC–208 Rules, the Trustee filed comments dated July 16, 1992, with the Commission clearly stating that the adoption and application of the Rules to carriers in bankruptcy would violate the automatic stay of 11 U.S.C. § 362, and that the Rules were further flawed by statutory and constitutional deficiencies. The Commission failed to give the Trustee's comments serious consideration, although it had no reasonable basis to question the Trustee's arguments given the plain language of § 362(a)(3), the inapplicability of §§ 362(b)(4)–(5) to violations of § 362(a)(3), and the Commission's prior decisions acknowledging its lack of statutory authority to exercise primary jurisdiction over reparations claims. The Commission had ev-

ery reason to know that its actions violated both the Interstate Commerce Act and the Bankruptcy Code and could never withstand judicial review.

Even if another might consider the Commission's improper reliance on *MCorp* to be a good faith credible extension of law, that affirmative defense is unavailable with respect to its violation of the ICA. Faced with a series of defeats in the courts, the Commission undertook to engage in self-help in attempting to usurp original jurisdiction from the courts. Such imperious behavior cannot be condoned.

This court concludes there existed no substantial justification for either the underlying actions taken by the Commission in promulgating the MC–208 Rules or their untenable defense of those Rules in court. Further, the special circumstances present militate entirely against the Commission. Accordingly, the Trustee is entitled to recover attorneys' fees and costs under 28 U.S.C. § 2412(d).

### D. *Attorneys' Fees*

 Under the EAJA, fees are recoverable at a rate of $75 per hour, adjusted for inflation since 1981. *Ramon–Sepulveda v. INS,* 863 F.2d 1458, 1463–64 (9th Cir.1988). Under the formula for calculating the adjusted rate set forth in *Ramon–Sepulveda,* the Trustee and his counsel are entitled to recover fees at a rate of $115.92 per hour. Based upon the rate cap, adjusted for inflation, the Trustee is entitled to an award of attorneys' fees of $42,844.04 (37.3 hours of actual time expended by the Trustee × $115.92 + 369.60 hours of actual time expended by Tuttle & Taylor × $115.92 = $42,844.04).