153 F.3d 1000
 98 Cal. Daily Op. Serv. 6639, 98 Daily Journal
D.A.R. 9252
Kenneth HELGESON; Florence Helgeson, husband and wife;
Gene Helgeson; Nancy Helgeson, husband and wife;
Leon Helgeson, Plaintiffs-Appellants,
v.
BUREAU OF INDIAN AFFAIRS, DEPARTMENT OF THE INTERIOR, United
States of America, Defendant-Appellee.
 No. 97-35974.
 United States Court of Appeals,
Ninth Circuit.
 Argued and Submitted May 21, 1998.
Decided Aug. 27, 1998.
 
 Robert M. Kampfer, Great Falls, Montana, for plaintiffs-appellants.
 H. Thomas Byron III, United States Department of Justice, Washington, D.C., and Sherry Scheel Matteucci, United States Attorney, Billings, Montana, for defendant-appellee.
 Appeal from the United States District Court for the District of Montana; Paul G. Hatfield, District Judge, Presiding. D.C. No. CV-96-00069-PGH.
 Before: PREGERSON, TASHIMA, and THOMAS, Circuit Judges.
 THOMAS, Circuit Judge:
 
 
 1
 This appeal challenges the denial of an Indian Revolving Fund loan application by the Bureau of Indian Affairs ("BIA"). The district court granted the BIA summary judgment, holding that its actions were not arbitrary, capricious or an abuse of discretion. We agree, albeit on a somewhat different ground.
 
 
 2
 * Dora Helgeson, the eighty-year-old mother of Kenneth, Gene, and Leon Helgeson (the latter three are collectively referred to as the "Helgesons"), owned a cattle ranch encompassing 1444 acres of trust property on the Fort Belknap Indian Reservation in Montana. One mortgage on this property secured a delinquent debt of approximately $220,000 that Dora owed to the Federal Land Bank ("FLB"), while a second mortgage secured another debt of approximately $103,000 to the Farmers Home Administration ("FmHA"). The delinquent FLB debt was in the process of foreclosure. In addition, Kenneth owned 240 acres of trust land that was also mortgaged to secure the FLB debt. Kenneth and Florence were contractually liable for the entire amount of the FLB debt.
 
 
 3
 To fulfill their goal of taking over and operating Dora's ranch, the Helgesons, all enrolled members of the Assiniboine Tribe, sought assistance from the BIA's Indian Revolving Loan Fund after they had failed to secure credit from other sources. Congress established this fund "to provide credit [to Native Americans] that is not available from private money markets, or to supplement funds from private lenders." 25 U.S.C. § 1461. Direct loans may be made from this fund "for any purpose which will promote the economic development of (a) the individual Indian borrower ... and (b) the Indian organization and its members." 25 U.S.C. § 1462. However, Congress expressly required the Secretary of the Interior (the "Secretary") to condition the availability of loans upon the existence of "a reasonable prospect of repayment." 25 U.S.C. § 1463. The regulations interpreting and implementing the direct loan program contain an identical prohibition against loans from the revolving loan fund unless "there is a reasonable prospect of repayment." 25 C.F.R. § 101.3.
 
 
 4
 On October 17, 1994, Kenneth, Gene and Leon Helgeson each applied for a direct loans, each in the amount of $168,065, proposing to use the funds to pay off the FLB debt, purchase additional livestock, and cover some costs of ranch operation. Although these applications were separate, each proposal depended upon the others for its success. On October 31, 1994, the Fort Belknap Agency, the local BIA office on the Fort Belknap Indian Reservation, forwarded the Helgesons' loan applications and documentation to the BIA Area Director in Billings, Montana. The cover memorandum and the accompanying credit memorandum recommended approval of the loan applications. However, the BIA's Office of Economic Development, from whom the Area Director had sought technical assistance, concluded that the Helgesons' plan "d[id] not appear approvable because of undue risk," and "repayment appear[ed] improbable." In addition, the BIA Billings Area Office conducted its own detailed financial, market, and organization and management analyses of the Helgesons' proposals. This review revealed several substantial weaknesses in the Helgesons' applications, including Kenneth and Florence Helgesons' liability for the full amount of the FLB loan; the absence of balance sheets for previous years; the fact that the total real estate debt would exceed the value of the property securing that debt; the need for annual operating loans; the relatively weak financial positions of the applicants; and the annual payments required to keep the FmHA debt current. Thus, while the Billings Area Office observed that the Helgesons' plan, "as presented," demonstrated "repayment ability," it also noted that 1) the absence of historical statements and the structure of the Helgesons' loan requests made it difficult to analyze the success of their project; and 2) the repayment of the loan hinged upon the assumptions that the Helgesons would receive future loans for operating expenses and that Dora would continue to be able to make payments on the FmHA loan.
 
 
 5
 On April 7, 1995, the Acting Area Director of the Billings Area Office notified the Helgesons in three separate letters that their applications had not been approved "because of undue risk and the lack of a reasonable prospect of repayment." The letters focused upon three flaws in the Helgesons' plan: "the absence of any adverse conditions for a considerable period of time; reliance on constant annual operating cost borrowing; and ... the maintenance of additional annual debt service on the $103,000 real estate debt owed to Farmers Home Administration by [Dora]." The Helgesons appealed these decisions to the Interior Board of Indian Appeals (the "IBIA"). Affirming the Acting Area Director's decisions on March 25, 1996, the IBIA found that these decisions were "amply supported by the record in this case, including the analyses in the Agency and Area credit memoranda and the advice given in a March 15, 1995 memorandum from the Director of the Office of Economic Development in BIA's Central Office." Hence, the IBIA declined to disturb the Acting Area Director's judgment that there was "no reasonable prospect of repayment."
 
 
 6
 The Helgesons subsequently instituted the instant action in United States District Court for the District of Montana on June 10, 1996, seeking 1) judicial review of the BIA's decision pursuant to 7 U.S.C. § 706; and 2) a determination that the BIA's decision was erroneous and that their loan applications should be granted. On August 19, 1997, the district court granted summary judgment to the BIA and denied the Helgesons' motion for summary judgment. This timely appeal followed.
 
 II
 
 7
 The threshold question we face is whether the agency's action is subject to judicial review. The BIA claims that it has unfettered discretion concerning direct loan applications, and its decision is therefore unreviewable pursuant to 5 U.S.C. § 701(a)(2) which exempts from judicial review "agency action committed to agency discretion by law." Because we agree that the BIA's determination that the Helgesons' loan applications did not offer "a reasonable prospect of repayment" was discretionary, we decline to review the merits of that determination.
 
 
 8
 We begin by noting the "strong presumption that Congress intends judicial review of administrative action." Traynor v. Turnage, 485 U.S. 535, 542, 108 S.Ct. 1372, 99 L.Ed.2d 618 (1988) (citation omitted). The presumption is overcome if there is "clear and convincing evidence of a contrary congressional intent," see Board of Governors of Fed. Reserve Sys. v. MCorp Fin., Inc., 502 U.S. 32, 44, 112 S.Ct. 459, 116 L.Ed.2d 358 (1991) (citation omitted), or "in those rare instances where 'statutes are drawn in such broad terms that in a given case there is no law to apply.' " Heckler v. Chaney, 470 U.S. 821, 830, 105 S.Ct. 1649, 84 L.Ed.2d 714 (1985) (citing S.Rep. No. 752, at 26 (1945) (remaining citation omitted)). The discretionary exception to judicial review applies if "the statute is drawn so that a court would have no meaningful standard against which to judge the agency's exercise of discretion." Id. at 830, 105 S.Ct. 1649. To make this assessment, we first look at the statute itself. Webster v. Doe, 486 U.S. 592, 600, 108 S.Ct. 2047, 100 L.Ed.2d 632 (1988).
 
 
 9
 The authorizing statute relevant to this case, 25 U.S.C. § 1463, provides:
 
 
 10
 Loans may be made only when, in the judgment of the Secretary, there is a reasonable prospect of repayment, and only to applicants who in the opinion of the Secretary are unable to obtain financing from other sources on reasonable terms and conditions.
 
 
 11
 "[T]he mere fact that a statute contains discretionary language does not make agency action unreviewable." Beno v. Shalala, 30 F.3d 1057, 1066 (9th Cir.1994). The overall statutory structure must be considered, see id., as well as whether the subject matter is "an area of executive action 'in which the courts have long been hesitant to intrude.' " Lincoln v. Vigil, 508 U.S. 182, 191, 113 S.Ct. 2024, 124 L.Ed.2d 101 (1993) (quoting Franklin v. Massachusetts, 505 U.S. 788, 819, 112 S.Ct. 2767, 120 L.Ed.2d 636 (1992) (Stevens, J., concurring)).
 
 
 12
 The language and structure of the authorizing statute establish that neither the BIA's decision-making process nor its outcome is subject to judicial review, as long as the BIA relies on the statutory factors in arriving at its loan decisions. The statute establishes two eligibility prerequisites for receiving a direct loan from the Indian Revolving Loan Fund: (1) "a reasonable prospect of repayment"; and (2) an inability to secure financing from other sources under reasonable conditions. This scheme commits the assessment of whether an applicant has demonstrated a "reasonable prospect of repayment" to the "judgment" of the Secretary, and leaves the evaluation of the adequacy of alternate financing to the Secretary's "opinion." Determining whether applicants have satisfied these statutory eligibility criteria is therefore vested in the Secretary's discretion. See E.J. Friedman Co. v. United States, 6 F.3d 1355, 1359 (9th Cir.1993) (holding that IRS's refusal to discharge tax lien was not reviewable under Administrative Procedure Act, as applicable statutes and regulations provided "that the IRS [might], in its discretion, issue a certificate of discharge if it determine[d] that the interest of the United states in the property to be discharged ha[d] no value"). To the extent the plaintiffs challenge the rationale underlying the Secretary's conclusion that there "was no reasonable prospect of repayment," judicial review is therefore unavailable.
 
 
 13
 The statutory structure confirms this construction, precluding judicial review to the extent the plaintiffs seek review of the outcome of the BIA's decision-making process, itself outside the ambit of judicial review. Gete v. INS, 121 F.3d 1285, 1291 (9th Cir.1997). The statute does not equate loan eligibility with loan entitlement, but provides that loans "may" be issued to eligible applicants. Hence, even if the Helgesons had met eligibility criteria, the statute proffered no guarantee that they would receive a loan.
 
 
 14
 Further, the question of whether, and in what amount, a government loan should be afforded is an area of executive action usually reserved to agency discretion as involving "nice issues of judgment and choice ... which require the exercise of informed discretion." Gifford v. SBA, 626 F.2d 85, 87 (9th Cir.1980) (quoting Panama Canal Co. v. Grace Line, Inc., 356 U.S. 309, 317, 78 S.Ct. 752, 2 L.Ed.2d 788 (1958)). Discretionary government loans generally constitute such an executive action, for it is not our proper function to sit as a judicial loan review committee.
 
 
 15
 For these reasons, the Helgesons' claim that the Secretary abused his discretion in determining that there was no reasonable prospect of repayment is not subject to judicial review.
 
 III
 
 16
 The Helgesons do not solely quarrel with the Secretary's discretionary analysis of their loan repayment prospects. They also allege that the Secretary founded his decision on an improper factor: undue risk. While the BIA Area Director's denial letter cites "undue risk" as well as "the lack of a reasonable prospect of repayment" as the agency rationale, we find that the BIA did not exceed its statutory authority.
 
 
 17
 Although the BIA has the discretion to determine loan eligibility by assessing whether applicants fulfill the criteria of 25 U.S.C. § 1463, nothing in section 1463 empowers the BIA to apply non-statutory factors to evaluate eligibility. An agency's decision is subject to review to determine if the agency departed from statutory criteria. See Heckler, 470 U.S. at 833, 105 S.Ct. 1649 ("Congress did not set agencies free to disregard legislative direction in the statutory scheme that the agency administers."). The discretionary exception contained in 5 U.S.C. § 701(a)(2) does not apply to an allegation that an agency has exceeded statutory guidelines, because the claim does not involve a question "committed to agency discretion by law." Indeed, when statutory language supplies sufficient standards constraining agency discretion, judicial review is appropriate. Heckler, 470 U.S. at 832-33, 105 S.Ct. 1649 (observing that an agency's enforcement action "at least can be reviewed to determine whether the agency exceeded its statutory powers"). Accordingly, despite our refusal to assess whether a "reasonable prospect of repayment" of the Helgesons' requested loans does exist, we review the BIA's determination to see if the agency in fact transgressed the boundaries of its discretion by relying upon a criterion that section 1463 does not contain.
 
 
 18
 At first glance, the Area Director's reliance upon "undue risk" as a disqualifying factor appears problematic because the statute contemplates loans to uncreditworthy borrowers. Indeed, the regulations provide:
 
 
 19
 Loans may be made only to an applicant who, in the opinion of the Commissioner, is unable to obtain financing on reasonable terms and conditions from other sources such as tribal relending programs, banks, Farmers Home Administration, Small Business Administration, Production Credit Associations, or Federal Land Banks, and is also unable to obtain a guaranteed or insured loan pursuant to title II of the Indian Financing Act of 1974 (88 Stat. 77).
 
 
 20
 25 C.F.R. § 101.3(a).
 
 
 21
 Thus, to qualify for a program loan, an applicant must demonstrate that the potential loan is not creditworthy not only in the normal commercial markets, but in special assistance federal programs. If after proving the loan unmarketable in order to qualify for a BIA direct loan, the BIA could deny eligibility merely because the borrower was uncreditworthy, the statutory scheme would be thwarted, and the applicant committed to the fate of Tantalus. We must therefore discern whether the BIA relied upon an impermissible extra-statutory factor to disqualify the Helgesons, or whether the use of the phrase "undue risk" was mere surplusage, subsumed under consideration of a "reasonable prospect of repayment."
 
 
 22
 While the Helgesons assert that "undue risk" has no bearing upon the statutory standard for evaluating their loan applications, the BIA's grounds for denying the applications reflect the close inverse relationship between excessive risk and a "reasonable prospect of repayment." After a careful examination of the record, we conclude that use of the phrase "undue risk" did not import a non-statutory factor into the BIA's evaluation of the Helgesons' loan applications; it was merely another way of expressing their failure to meet the statutory criterion of a "reasonable prospect of repayment," and was not employed as an independent disqualifying factor. Thus, we conclude that the BIA did not violate its statutory mandate in this instance.
 
 IV
 
 23
 The Helgesons contend that the BIA should have considered alternative approaches to funding their ranching operation and should have notified them about these alternatives. Contrary to this contention, the BIA had no obligation to transform the Helgesons' applications for a loan into applications for a grant under the Indian Business Development Program, see 25 U.S.C. § 1521. While the BIA was required to provide "competent management and technical assistance for preparation of [ ] application[s]," 25 U.S.C. § 1541, the BIA fulfilled this duty by deploying members of its credit staff to assist the Helgesons in developing their applications. Nothing in the language of 25 U.S.C. § 1541 or its legislative history, see House Interior and Insular Affairs Comm., Indian Financing Act Amendments of 1984, H. Rep. No. 98-991, reprinted in 1984 U.S.C.C.A.N. 2889; House Interior and Insular Affairs Comm., Indian Financing Act of 1974, H. Rep. No. 93-907, reprinted in 1974 U.S.C.C.A.N. 2873, reflects a congressional intention to require the BIA to reshape loan applications in the manner the Helgesons assert.
 
 V
 
 24
 In granting summary judgment to the BIA, the district court did not consider the unreviewability of the BIA's denial of the Helgesons' loan applications. Nonetheless, because the record establishes that judicial review is unavailable for the BIA's decision, we are free to affirm the district court's judgment on that basis, as well as on the basis of the propriety of the BIA's decision itself. See Schneider v. Vennard (In re Apple Computer Secs. Litig.), 886 F.2d 1109, 1112 (9th Cir.1989) ("We may affirm on any ground supported by the record."). Hence, we affirm the district court's order.[1]
 
 
 25
 AFFIRMED.
 
 
 
 [1]
 In oral argument, the BIA suggested that this case might be moot. The BIA contended that the relief the Helgesons sought-a grant of their loan applications-was unavailable because Congress had not funded the direct loan program for the previous three years. We decline to reach this argument, which relies upon information outside the record