# BOARD OF GOVERNORS OF THE FEDERAL RESERVE SYSTEM *v.* MCORP FINANCIAL, INC., ET AL.

No. 90–913.   Argued October 7, 1991—Decided December 3, 1991*

---

*Together with No. 90–914, *MCorp et al.* v. *Board of Governors of the Federal Reserve System,* also on certiorari to the same court.

STEVENS, J., delivered the opinion of the Court, in which all other Members joined, except THOMAS, J., who took no part in the consideration or decision of the cases.

*Jeffrey P. Minear* argued the cause for petitioner in No. 90–913 and respondent in No. 90–914. On the briefs were *Solicitor General Starr, Assistant Attorney General Gerson, Deputy Solicitor General Roberts, Michael R. Lazerwitz, Anthony J. Steinmeyer,* and *James V. Mattingly, Jr.*

*Alan B. Miller* argued the cause for respondents in No. 90–913 and petitioners in No. 90–914. With him on the briefs were *Harvey R. Miller, Steven Alan Reiss, John D.*

*Hawke, Jr., Jerome I. Chapman, Howard N. Cayne,* and *David F. Freeman, Jr.*

JUSTICE STEVENS delivered the opinion of the Court.

MCorp, a bank holding company, filed voluntary bankruptcy petitions in March 1989. It then initiated an adversary proceeding against the Board of Governors of the Federal Reserve System (Board) seeking to enjoin the prosecution of two administrative proceedings, one charging MCorp with a violation of the Board's "source of strength" regulation[1] and the other alleging a violation of § 23A of the Federal Reserve Act, as added, 48 Stat. 183, and amended.[2] The District Court enjoined both proceedings, and the Board appealed. The Court of Appeals held that the District Court had no jurisdiction to enjoin the § 23A proceeding, but that, under the doctrine set forth in *Leedom* v. *Kyne,* 358 U. S. 184 (1958), the District Court had jurisdiction to review the validity of the "source of strength" regulation. The Court of Appeals then ruled that the Board had exceeded its statutory authority in promulgating that regulation. 900 F. 2d 852 (CA5 1990). We granted certiorari, 499 U. S. 904 (1991), to review the entire action but, because we conclude that the District Court lacked jurisdiction to enjoin either regulatory proceeding, we do not reach the merits of MCorp's challenge to the regulation.

I

In 1984, the Board promulgated a regulation requiring every bank holding company to "serve as a source of financial

---

[1] The "source of strength" regulation provides in relevant part:
"A bank holding company shall serve as a source of financial and managerial strength to its subsidiary banks and shall not con[d]uct its operations in an unsafe or unsound manner." 12 CFR § 225.4(a)(1) (1991).

[2] Section 23A sets forth restrictions on bank holding companies' corporate practices, including restrictions on transactions between subsidiary banks and nonbank affiliates. See 12 U. S. C. § 371c.

and managerial strength to its subsidiary banks."[3]  In October 1988, the Board commenced an administrative proceeding against MCorp,[4] alleging that MCorp violated the source of strength regulation and engaged in unsafe and unsound banking practices that jeopardized the financial condition of its subsidiary banks.  The Board also issued three temporary cease-and-desist orders.[5]  The first forbids MCorp to declare or pay any dividends without the prior approval of the Board.  App. 65–67.  The second forbids MCorp to dissipate any of its nonbank assets without the prior approval of the Board.  *Id.*, at 68–70.  The third directs MCorp to use "all of its assets to provide capital support to its Subsidiary Banks in need of additional capital."  *Id.*, at 85.  By agreement, enforcement of the third order was suspended while MCorp sought financial assistance from the Federal Deposit Insurance Corporation (FDIC).[6]

In March 1989, the FDIC denied MCorp's request for assistance.  Thereafter, creditors filed an involuntary bankruptcy petition against MCorp in the Southern District of New York, and the Comptroller of the Currency determined that 20 of MCorp's subsidiary banks were insolvent and, accordingly, appointed the FDIC as receiver of those banks.  MCorp then filed voluntary bankruptcy petitions in the

---

[3] See n. 1, *supra*.  In 1987, the Board clarified its policy and stated that a "bank holding company's failure to assist a troubled or failing subsidiary bank . . . would generally be viewed as an unsafe and unsound banking practice or a violation of [12 CFR § 225.4(a)(1)] or both."  52 Fed. Reg. 15707–15708.

[4] The term "MCorp" refers to the corporation and to two of its wholly owned subsidiaries, MCorp Financial, Inc., and MCorp Management.

[5] MCorp timely challenged these orders in the District Court for the Northern District of Texas, pursuant to 12 U. S. C. § 1818(c)(2).  The District Court stayed MCorp's challenge pending resolution of this proceeding.  Brief for MCorp et al. 3.

[6] The current status of this order is unclear.  See Tr. of Oral Arg. 22–25, 41–42.  We address only MCorp's effort to enjoin the Board's administrative proceedings and express no opinion on the continuing vitality or validity of any of the temporary cease-and-desist orders.

Southern District of Texas and all bankruptcy proceedings were later consolidated in that forum.

At the end of March, the Board commenced a second administrative proceeding against MCorp alleging that it had violated § 23A of the Federal Reserve Act by causing two of its subsidiary banks to extend unsecured credit of approximately $63.7 million to an affiliate. For convenience, we shall refer to that proceeding as the "§ 23A proceeding" and to the earlier proceeding as the "source of strength proceeding."

In May 1989, MCorp initiated this litigation by filing a complaint in the Bankruptcy Court against the Board seeking a declaration that both administrative proceedings had been automatically stayed pursuant to the Bankruptcy Code; in the alternative, MCorp prayed for an injunction against the further prosecution of those proceedings without the prior approval of the Bankruptcy Court. On the Board's motion, the District Court transferred that adversary proceeding to its own docket.

In June 1989, the District Court ruled that it had jurisdiction to enjoin the Board from prosecuting both administrative proceedings against MCorp and entered a preliminary injunction halting those proceedings. The injunction restrained the Board from exercising "its authority over bank holding companies . . . to attempt to effect, directly or indirectly, a reorganization of the MCorp group [of companies] except through participation in the bankruptcy proceedings." *In re MCorp*, 101 B. R. 483, 491. The Board appealed.

Although the District Court did not differentiate between the two Board proceedings, the Court of Appeals held that the § 23A proceeding could go forward but that the source of strength proceeding should be enjoined. The court reasoned that the plain language of the judicial review provisions of the Financial Institutions Supervisory Act of 1966

(FISA), 80 Stat. 1046, as amended, 12 U. S. C. § 1818 *et seq.* (1988 ed. and Supp. II), particularly § 1818(i)(1), deprived the District Court of jurisdiction to enjoin either proceeding, but that our decision in *Leedom* v. *Kyne*, 358 U. S. 184 (1958), nevertheless authorized an injunction against an administrative proceeding conducted without statutory authorization. The Court of Appeals ruled that the Board's promulgation and enforcement of its source of strength regulation exceeded its statutory authority. Accordingly, the court vacated the District Court injunction barring the § 23A proceeding, but remanded the case with instructions to enjoin the Board from enforcing its source of strength regulation. Both parties petitioned for certiorari.

The Board's petition challenges the Court of Appeals' interpretation of *Leedom* v. *Kyne*, as well as its invalidation of the source of strength regulation. MCorp's petition challenges the Court of Appeals' interpretation of the relationship between the provisions governing judicial review of Board proceedings and those governing bankruptcy proceedings. We first address the latter challenge.

## II

A series of federal statutes gives the Board substantial regulatory power over bank holding companies and establishes a comprehensive scheme of judicial review of Board actions. See FISA; the Bank Holding Company Act of 1956 (BHCA), 12 U. S. C. § 1841 *et seq.* (1988 ed. and Supp. II); and the International Lending Supervision Act of 1983, 12 U. S. C. § 3901 *et seq.* In this litigation, the most relevant of these is FISA.[7]

---

[7] Although the several "Notices of Charges and of Hearing" issued by the Board against MCorp relied on FISA *and* the BHCA, *e. g.*, App. 57, 72, the parties have focused only on the former. We note, however, that the BHCA includes a preclusion provision that is similar to § 1818(i)(1) in FISA. See 12 U. S. C. § 1844(e)(2).

FISA authorizes the Board to institute administrative proceedings culminating in cease-and-desist orders, 12 U. S. C. §§ 1818(a)–(b) (1988 ed., Supp. II), and to issue temporary cease-and-desist orders that are effective upon service on a bank holding company. § 1818(c). In addition, FISA establishes a tripartite regime of judicial review. First, § 1818(c)(2) provides that, within 10 days after service of a temporary order, a bank holding company may seek an injunction in district court restraining enforcement of the order pending completion of the related administrative proceeding. Second, § 1818(h) authorizes court of appeals review of final Board orders on the application of an aggrieved party.[8] Finally, § 1818(i)(1) provides that the Board may apply to district court for enforcement of any effective and outstanding notice or order.

None of these provisions controls this litigation: The action before us is not a challenge to a temporary Board order, nor a petition for review of a final Board order, nor an enforcement action initiated by the Board. Instead, FISA's preclusion provision appears to speak directly to the jurisdictional question at issue in this litigation:

---

[8] The statute characterizes such review of final Board orders as "exclusive" and provides:

"(2) Any party to any proceeding under paragraph (1) may obtain a review . . . by the filing in the court of appeals of the United States for the circuit in which the home office of the depository institution is located, or in the United States Court of Appeals for the District of Columbia Circuit, within thirty days after the date of service of such order, a written petition praying that the order of the agency be modified, terminated, or set aside. . . . Upon the filing of such petition, such court shall have jurisdiction, which upon the filing of the record shall except as provided in the last sentence of said paragraph (1) be exclusive, to affirm, modify, terminate, or set aside, in whole or in part, the order of the agency." 12 U. S. C. § 1818(h)(2) (1988 ed., Supp. II).

The referenced exception concerns actions taken by the agency with permission of the court.

"[E]xcept as otherwise provided in this section no court shall have jurisdiction to affect by injunction or otherwise the issuance or enforcement of any notice or order under this section, or to review, modify, suspend, terminate, or set aside any such notice or order." *Ibid.*

Notwithstanding this plain, preclusive language, MCorp argues that the District Court's injunction against the prosecution of the Board proceedings was authorized either by the automatic stay provision in the Bankruptcy Code, 11 U. S. C. § 362, or by the provision of the Judicial Code authorizing district courts in bankruptcy proceedings to exercise concurrent jurisdiction over certain civil proceedings, 28 U. S. C. § 1334(b). We find no merit in either argument.

The filing of a bankruptcy petition operates as an automatic stay of several categories of judicial and administrative proceedings.[9] The Board's planned actions against MCorp constitute the "continuation . . . [of] administrative . . . proceeding[s]" and would appear to be stayed by 11 U. S. C. § 362(a)(1). However, the Board's actions also fall squarely

---

[9] The automatic stay provision provides in relevant part:

"(a) Except as provided in subsection (b) of this section, a petition filed under section 301, 302, or 303 of this title, or an application filed under section 5(a)(3) of the Securities Investor Protection Act of 1970 (15 U. S. C. 78eee(a)(3)), operates as a stay, applicable to all entities, of—

"(1) the commencement or continuation, including the issuance or employment of process, of a judicial, administrative, or other action or proceeding against the debtor that was or could have been commenced before the commencement of the case under this title, or to recover a claim against the debtor that arose before the commencement of the case under this title;

.      .      .      .      .

"(3) any act to obtain possession of property of the estate or of property from the estate or to exercise control over property of the estate;

.      .      .      .      .

"(6) any act to collect, assess, or recover a claim against the debtor that arose before the commencement of the case under this title . . . ." 11 U. S. C. § 362(a).

within § 362(b)(4), which expressly provides that the automatic stay will not reach proceedings to enforce a "governmental unit's police or regulatory power."[10]

MCorp contends that in order for § 362(b)(4) to obtain, a court must first determine whether the proposed exercise of police or regulatory power is legitimate and that, therefore, in this litigation the lower courts did have the authority to examine the legitimacy of the Board's actions and to enjoin those actions. We disagree. MCorp's broad reading of the stay provisions would require bankruptcy courts to scrutinize the validity of every administrative or enforcement action brought against a bankrupt entity. Such a reading is problematic, both because it conflicts with the broad discretion Congress has expressly granted many administrative entities and because it is inconsistent with the limited authority Congress has vested in bankruptcy courts. We therefore reject MCorp's reading of § 362(b)(4).

MCorp also argues that it is protected by §§ 362(a)(3) and 362(a)(6) of the Bankruptcy Code. Those provisions stay "any act" to obtain possession of, or to exercise control over, property of the estate, or to recover claims against the debtor that arose prior to the filing of the bankruptcy petition. MCorp contends that the ultimate objective of the source of strength proceeding is to exercise control of corporate assets and that the § 23A proceeding seeks enforcement of a prepetition claim.

We reject these characterizations of the ongoing administrative proceedings. At this point, the Board has only issued "Notices of Charges and of Hearing" and has expressed

---

[10] Title 11 U. S. C. § 362(b)(4) provides:

"(b) The filing of a petition under section 301, 302, or 303 of this title, or of an application under section 5(a)(3) of the Securities Investor Protection Act of 1970 (15 U. S. C. 78eee(a)(3)), does not operate as a stay—

.        .        .        .        .

"(4) under subsection (a)(1) of this section, of the commencement or continuation of an action or proceeding by a governmental unit to enforce such governmental unit's police or regulatory power . . . ."

its intent to determine whether MCorp has violated specified statutory and regulatory provisions. It is possible, of course, that the Board proceedings, like many other enforcement actions, may conclude with the entry of an order that will affect the Bankruptcy Court's control over the property of the estate, but that *possibility* cannot be sufficient to justify the operation of the stay against an enforcement proceeding that is expressly exempted by § 362(b)(4). To adopt such a characterization of enforcement proceedings would be to render subsection (b)(4)'s exception almost meaningless. If and when the Board's proceedings culminate in a final order, and if and when judicial proceedings are commenced to enforce such an order, then it may well be proper for the Bankruptcy Court to exercise its concurrent jurisdiction under 28 U. S. C. § 1334(b). We are not persuaded, however, that the automatic stay provisions of the Bankruptcy Code have any application to ongoing, nonfinal administrative proceedings.[11]

MCorp's final argument rests on 28 U. S. C. § 1334(b). That section authorizes a district court to exercise concurrent jurisdiction over certain bankruptcy-related civil proceedings that would otherwise be subject to the exclusive jurisdiction of another court.[12] MCorp's reliance is misplaced. Section 1334(b) concerns the allocation of jurisdiction between bankruptcy courts and other *"courts,"* and, of

---

[11] The Board suggests that the automatic stay provisions of § 362 do not themselves confer jurisdiction on the bankruptcy court, and thus that the filing of a bankruptcy petition operates as an automatic stay only where the bankruptcy court's jurisdiction has not already been precluded by a statute like § 1818(i)(1). We need not address this question in light of our determination that the automatic stay does not apply to the Board's ongoing administrative proceedings.

[12] Title 28 U. S. C. § 1334(b) provides:

"(b) Notwithstanding any Act of Congress that confers exclusive jurisdiction on a court or courts other than the district courts, the district court shall have original but not exclusive jurisdiction of all civil proceedings arising under title 11, or arising in or related to cases under title 11."

course, an administrative agency such as the Board is not a "court." Moreover, contrary to MCorp's contention, the prosecution of the Board proceedings, prior to the entry of a final order and prior to the commencement of any enforcement action, seems unlikely to impair the Bankruptcy Court's exclusive jurisdiction over the property of the estate protected by 28 U. S. C. § 1334(d).[13] In sum, we agree with the Court of Appeals that the specific preclusive language in 12 U. S. C. § 1818(i)(1) (1988 ed., Supp. II) is not qualified or superseded by the general provisions governing bankruptcy proceedings on which MCorp relies.

## III

Although the Court of Appeals found that § 1818(i)(1) precluded judicial review of many Board actions, it exercised jurisdiction in this litigation based on its reading of *Leedom* v. *Kyne*, 358 U. S. 184 (1958). *Kyne* involved an action in District Court challenging a determination by the National Labor Relations Board (NLRB) that a unit including both professional and nonprofessional employees was appropriate for collective-bargaining purposes—a determination in direct conflict with a provision of the National Labor Relations Act.[14] The Act, however, did not expressly authorize any judicial review of such a determination. Relying on *Switchmen* v. *National Mediation Bd.*, 320 U. S. 297 (1943), the NLRB argued that the statutory provisions establishing review of final Board orders in the courts of appeals indicated a congressional intent to bar review of any NLRB action

---

[13] That subsection provides:

"(d) The district court in which a case under title 11 is commenced or is pending shall have exclusive jurisdiction of all of the property, wherever located, of the debtor as of the commencement of such case, and of property of the estate."

[14] See 29 U. S. C. § 159(b)(1).

in the District Court.[15]  The Court rejected that argument, emphasizing the presumption that Congress normally intends the federal courts to enforce and protect the rights that Congress has created.  Concluding that the Act did not bar the District Court's jurisdiction, we stated: "This Court cannot lightly infer that Congress does not intend judicial protection of rights it confers against agency action taken in excess of delegated powers."  358 U. S., at 190.

In this litigation, the Court of Appeals interpreted our opinion in *Kyne* as authorizing judicial review of any agency action that is alleged to have exceeded the agency's statutory authority.  *Kyne*, however, differs from this litigation in two critical ways.  First, central to our decision in *Kyne* was the fact that the Board's interpretation of the Act would wholly deprive the union of a meaningful and adequate means of vindicating its statutory rights.

> "Here, differently from the *Switchmen's* case, 'absence of jurisdiction of the federal courts' would mean 'a sacrifice or obliteration of a right which Congress' has given professional employees, for there is no other means, within their control . . . to protect and enforce that right." *Ibid.*

The cases before us today are entirely different from *Kyne* because FISA expressly provides MCorp with a meaningful and adequate opportunity for judicial review of the validity of the source of strength regulation.  If and when the Board

---

[15] In *Switchmen* v. *National Mediation Bd.*, 320 U. S., at 306, the Court had reasoned:

"When Congress in § 3 and in § 9 provided for judicial review of two types of orders or awards and in § 2 of the same Act omitted any such provision as respects a third type, it drew a plain line of distinction.  And the inference is strong from the history of the Act that that distinction was not inadvertent.  The language of the Act read in light of that history supports the view that Congress gave administrative action under § 2, Ninth a finality which it denied administrative action under the other sections of the Act."

finds that MCorp has violated that regulation, MCorp will have, in the Court of Appeals, an unquestioned right to review of both the regulation and its application.

The second, and related, factor distinguishing this litigation from *Kyne* is the clarity of the congressional preclusion of review in FISA. In *Kyne,* the NLRB contended that a statutory provision that provided for judicial review implied, by its silence, a preclusion of review of the contested determination. By contrast, in FISA Congress has spoken clearly and directly: *"[N]o court shall have jurisdiction to affect by injunction or otherwise the issuance or enforcement of any [Board] notice or order under this section."* 12 U. S. C. § 1818(i)(1) (1988 ed., Supp. II) (emphasis added). In this way as well, this litigation differs from *Kyne.*[16]

Viewed in this way, *Kyne* stands for the familiar proposition that "only upon a showing of 'clear and convincing evidence' of a contrary legislative intent should the courts restrict access to judicial review." *Abbott Laboratories* v. *Gardner,* 387 U. S. 136, 141 (1967). As we have explained, however, in this case the statute provides us with clear and convincing evidence that Congress intended to deny the District Court jurisdiction to review and enjoin the Board's ongoing administrative proceedings.

## IV

The Court of Appeals therefore erred when it held that it had jurisdiction to consider the merits of MCorp's challenge to the source of strength regulation. In No. 90–913, the

---

[16] The other cases relied upon by the Court of Appeals—*Bowen* v. *Michigan Academy of Family Physicians,* 476 U. S. 667 (1986); *Breen* v. *Selective Service Local Bd. No. 16,* 396 U. S. 460 (1970); and *Oestereich* v. *Selective Service System Local Bd. No. 11,* 393 U. S. 233 (1968)—are distinguishable from this litigation for the same reasons. In each of those cases, the Court recognized that an unduly narrow construction of the governing statute would severely prejudice the party seeking review, and construed the statute to allow judicial review not expressly provided.

judgment of the Court of Appeals remanding the case with instructions to enjoin the source of strength proceedings is therefore reversed. In No. 90–914, the judgment of the Court of Appeals vacating the District Court's injunction against prosecution of the § 23A proceeding is affirmed.

*It is so ordered.*

JUSTICE THOMAS took no part in the consideration or decision of these cases.