NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 10-1568
_____

LOUIS A. DENAPLES,
                                        Appellant
                        v.

OFFICE OF THE COMPTROLLER OF THE CURRENCY
_____

On Appeal from the United States District Court
for the Middle District of Pennsylvania
(D.C. No. 09-cv-01802)
District Judge:  Honorable Thomas I. Vanaskie
_____

Submitted Under Third Circuit LAR 34.1(a)
December 16, 2010

Before: JORDAN, HARDIMAN and VAN ANTWERPEN, *Circuit Judges*.

(Filed: December 17, 2010)
_____

OPINION OF THE COURT
_____

HARDIMAN, *Circuit Judge*.

Louis A. DeNaples appeals a District Court order dismissing his claim for lack of

subject matter jurisdiction under Federal Rule of Civil Procedure 12(b)(1).  We will

affirm.

I

Because we write for the parties, we recount only those facts necessary to our decision. DeNaples is a member of the Board of Directors of First National Community Bank (FNCB), which operates in various locations in northeastern Pennsylvania. DeNaples joined the Board in 1972 and has been its Chairman since 1988. FNCB is a federally chartered bank and, as such, is subject to regulation by the Office of the Comptroller of Currency (OCC) pursuant to the National Bank Act of 1864. *See* 12 U.S.C. § 1 *et seq*.

In January 2008, the District Attorney for Dauphin County, Pennsylvania brought criminal perjury charges against DeNaples, following his testimony before the Pennsylvania Gaming Control Board regarding a gaming license for Mount Airy Casino. Shortly after he was charged, DeNaples took a leave of absence from FNCB. Thereafter, the OCC issued a Notice of Suspension pursuant to 12 U.S.C. § 1818(g)(1), which formally prohibited DeNaples from being involved with FNCB or any other FDIC-insured bank.

While he and the District Attorney negotiated a resolution to the perjury charges, DeNaples maintained that he would not accept a "pretrial diversion," because such an agreement would require him to resign from the Board of FNCB. *See* 12 U.S.C. § 1829 (stating that any person who enters into a "pretrial diversion or similar program" in connection with a crime involving dishonesty is prohibited from, *inter alia*, holding a

2

position as a director of an FDIC insured depository institutions without prior approval from the FDIC).  In April 2009, DeNaples and the District Attorney signed a Withdrawal Agreement, in which the District Attorney agreed to withdraw the perjury charges in exchange for various concessions from DeNaples.

Two days after DeNaples executed the Withdrawal Agreement, he received a letter from the OCC stating that the agency "ha[d] become aware of [DeNaples's] pretrial diversion agreement."  App. 72.  Because the agreement was "based on a crime that involves dishonesty or a breach of trust," DeNaples was "subject to the prohibitions set forth in 12 U.S.C. §[] 1829."  *Id*.  The letter also informed DeNaples that he "would be subject" to "fines not exceeding $1,000,000 . . . [per] day . . .  and/or a term of imprisonment of not more than five years" for a knowing violation of § 1829.  *Id.*  The OCC posted its determination on its website as a § 1829 enforcement action.[1]

In June 2009, DeNaples's counsel wrote a letter to the OCC challenging the agency's determination that the Withdrawal Agreement constituted a "pretrial diversion or similar agreement."  This letter included an opinion from a Pennsylvania criminal defense lawyer stating that the Withdrawal Agreement "was not, in any manner whatsoever, . . . [a] pretrial diversion under State Law."  *Id.* at 76.  The OCC responded to DeNaples's challenge with a second letter reaffirming its conclusion that the Withdrawal

---

[1] Section 1829 is a criminal statute enforceable by the Department of Justice.  The OCC is, however, authorized by § 1818 to remove an individual it finds to be in violation

3

Agreement constituted a "pretrial diversion or similar program" under § 1829. The letter

concluded that "pursuant to 12 U.S.C. § 1829 . . . [DeNaples] is permanently prohibited

from continuing service at the Bank or any other federally insured depository institution."

*Id.* at 83. The letter instructed DeNaples to "take immediate steps to inform the Board of

Directors that he may no longer serve in any capacity as [a director] of the Bank, and

indicate that his absence is permanent, rather than temporary in nature." *Id.*

After receiving the OCC's second letter, DeNaples filed a complaint in the District

Court requesting, *inter alia*, a declaration that the Withdrawal Agreement did not

constitute a "pretrial diversion or similar program." DeNaples argued that the letters

issued by the OCC constituted final agency action and, as such, were subject to review

under the Administrative Procedure Act (APA). *See* 5 U.S.C. § 704 ("[F]inal agency

action for which there is no other adequate remedy in a court [is] subject to judicial

review."). *But see* 5 U.S.C. § 701(a) (stating that APA review is unavailable to the extent

that "statutes preclude judicial review").

More than two months after DeNaples filed his complaint, the OCC commenced a

separate cease-and-desist proceeding against him pursuant to 12 U.S.C. § 1818(b). The

agency's objective in initiating the proceeding was to remove DeNaples from his position

as Chairman of the Board of FNCB for his violation of § 1829. One day after

commencing the § 1818(b) proceeding, the OCC filed a Motion to Dismiss DeNaples's

of § 1829. In this case, because the OCC was not acting pursuant to its authority under §

complaint, arguing that any resolution of the merits of DeNaples's claim by the District Court would impermissibly "affect" the OCC's cease-and-desist proceeding in violation of the jurisdictional bar in § 1818(i). *See* 12 U.S.C. § 1818(i)(1) ("[E]xcept as otherwise provided in this section or under section 1831*o* or 1831p-1 of this title no court shall have jurisdiction to affect by injunction or otherwise the issuance or enforcement of any notice or order under any such section, or to review, modify, suspend, terminate, or set aside any such notice or order."). After oral argument, the District Court granted the OCC's motion. This appeal followed.[2]

## II

We exercise plenary review over a District Court order dismissing a claim for lack of subject matter jurisdiction. *See Gould Elecs. Inc. v. United States*, 220 F.3d 169, 176 (3d Cir. 2000) (citing *Dresser Indus., Inc. v. Underwriters at Lloyds of London*, 106 F.3d 494, 496 (3d Cir. 1997)).

## III

DeNaples argues that the OCC was not authorized to issue the letters purporting to remove him under § 1829 and that judicial review of the OCC's actions does not implicate the jurisdictional bar of § 1818(i).

The District Court correctly rejected DeNaples's argument. Although DeNaples

---

1818, its purported enforcement action was not binding.

would have us review the enforcement letters in isolation from the OCC's pending §1818(b) cease-and-desist proceeding, it would be improper to do so. The OCC's enforcement letters constituted an agency determination that DeNaples's Withdrawal Agreement was a "pretrial diversion or similar agreement" under § 1829. This question is under formal consideration by the OCC in its ongoing § 1818(b) proceeding. The congressional framework enacted in § 1818 is intended to allow agencies to conduct formal reviews without interference from the federal courts. *See* 12 U.S.C. §1818(i)(1)("[E]xcept as otherwise provided in this section . . . no court shall have jurisdiction to affect by injunction or otherwise the issuance or enforcement of any notice or order under this section."). The broad language of § 1818(i) has led the Supreme Court to interpret its jurisdictional bar expansively. *See Bd. of Governors of Fed. Reserve Sys. v. MCorp Fin., Inc.*, 502 U.S. 32, 44 (1991) (holding that § 1818(i) provides "clear and convincing evidence" of congressional intent to strip jurisdiction). Here, the OCC's §1818(b) proceeding against DeNaples is authorized by the Federal Deposit Insurance Act. If we were to adjudicate the validity of the OCC's enforcement letters, our decision would impermissibly "affect" the OCC's pending § 1818(b) proceeding in violation of §1818(i)(1).[3]

---

[2] The District Court exercised jurisdiction pursuant to 28 U.S.C. § 1331, 5 U.S.C. §§ 701-706, and 28 U.S.C. §§ 2201-2202. We have appellate jurisdiction under 28 U.S.C. § 1291.

[3] DeNaples argues that judicial review of whether the OCC lacked authority to remove him pursuant to § 1829 would not "affect" the agency's pending cease-and-desist

DeNaples offers several reasons why the jurisdictional bar of § 1818(i) is inapplicable. First, he claims that § 1818(i)(1) is only intended to protect agency proceedings that are not yet final. Consequently, he insists that § 1818(i)(1) should not apply to his purported removal pursuant to § 1829, which he believes constituted final agency action. This argument fails to recognize the OCC's consistent position that the letters purporting to remove DeNaples pursuant to § 1829 have no binding force. Although the District Court concluded that the letters "bear the hallmarks of 'final agency action,'" the Court also repeatedly noted that the letters lacked any statutory basis of authority. *DeNaples v. Office of Comptroller of Currency*, No. 3:CV-09-1802, 2010 WL 457134, at *5 (M.D. Pa. Feb. 4, 2010). DeNaples cannot simultaneously argue both that the letters were issued without authority, and therefore are not final, and that judicial review of their merits is appropriate under § 1818(i)(1).

DeNaples also argues that § 1818(i) is inapplicable because the OCC did not

proceeding within the meaning of § 1818(i). It is unclear how this affects our analysis, however. Throughout this litigation, the OCC has maintained that the enforcement letters were not binding upon DeNaples. In response to the District Court's query whether there was any pending agency action that "would preclude Mr. DeNaples . . . from assuming his position on the Board of Directors," the OCC responded: "if he were to assume his position, he would not be in violation of the letters, you can't violate the letters. If we wanted to remove him, we would have to take some other temporary action or simply wait until we resolved it through the 1818(b) proceeding." App. 34-35. Thus, there is no agency action prohibiting DeNaples from returning to FNCB, although he may be subject to an enforcement action by the Department of Justice should he choose to return. DeNaples's attempt to have us insulate him from any liability pending the resolution of the OCC's cease-and-desist proceeding would be tantamount to a determination, contrary to § 1818(i), that he is not in violation of § 1829.

commence its cease-and-desist proceeding until after he filed a complaint in the District Court. The District Court correctly rejected this argument as well. The jurisdictional bar set forth in § 1818(i)(1) is not limited to judicial determinations that would "affect" agency proceedings outstanding at the time that the action is commenced. Rather, §1818(i)(1) imposes an expansive prohibition, stripping federal courts of jurisdiction whenever a determination could affect an agency decision. *See Hindes v. Fed. Deposit Insur. Corp.*, 137 F.3d 148, 164 (3d Cir. 1998) (holding that § 1818(i), by its own terms, "is not restricted to precluding judicial review which would interfere with an ongoing administrative proceeding"); *see also Groos Nat'l Bank v. Comptroller of Currency*, 573 F.2d 889, 895 (5th Cir. 1978) ("The bank and Manges requested an injunction as well as a declaratory judgment in their favor [prior to the initiation of the administrative proceeding]; section 1818(i) in terms removes the court's jurisdiction to issue an injunction affecting the regulatory agency's notice or order, except as provided in section 1818 proceedings and review."). Consequently, the fact that the OCC's cease-and-desist proceeding was commenced after DeNaples filed his complaint does not relieve us from the jurisdictional bar of § 1818(i).[4]

## IV

For the foregoing reasons, we will affirm the judgment of the District Court.

---

[4] We note that DeNaples will have access to judicial review of the OCC's order under 12 U.S.C. § 1818(h)(2) after the conclusion of the agency's cease-and-desist proceeding.