[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 14-15325
Non-Argument Calendar
_____

D.C. Docket No. 1:13-cv-22975-JEM

MARIA FERRER,
ARMANDO ALUART,

Plaintiffs-Appellants,

versus

JANET YELLEN,
Chairman of the Federal Reserve,
THOMAS J. CURRY,
Comptroller of the Currency,
GALEN VETTER,
Chief Executive Officer of Rust Consulting, Inc.,
SELECT PORTFOLIO SERVICING, INC.,
U.S. BANK, N.A., et al.,

Defendants-Appellees.

_____

Appeal from the United States District Court
for the Southern District of Florida
_____

(August 12, 2016)

Before HULL, MARCUS, and ROSENBAUM, Circuit Judges.

PER CURIAM:

This case arises out of administrative enforcement actions by federal banking agencies against various mortgage servicers, including U.S. Bank, N.A., following the mortgage foreclosure crisis of 2009 and 2010. These enforcement actions led to consent orders between the federal agencies and the mortgage servicers, which required the servicers to take action to correct their deficient residential mortgage servicing and foreclosure practices and to provide some compensation for borrowers injured by the deficient practices.

Plaintiffs-Appellants Maria Ferrer and Armando Aluart (collectively, "Plaintiffs"), represented by court-appointed counsel on appeal, are both eligible borrowers who received some compensation as a result of the consent orders. Believing that they had been shortchanged on the amount they were owed, Plaintiffs filed this lawsuit, proceeding *pro se* throughout the district court proceedings. The district court dismissed Plaintiffs' claims after concluding that 12 U.S.C. § 1818(i)(1), a judicial-review provision in the Financial Institutions Supervisory Act, which authorized the enforcement actions against the mortgage servicers, precluded the district court from hearing and resolving Plaintiffs' claims. After careful review, we agree with the district court that it lacked subject-matter jurisdiction, and we therefore affirm.

2

**I.**

We briefly recount some of the historical background to give context to Plaintiffs' specific allegations on appeal.  In April 2011, the Office of the Comptroller of the Currency and the Board of Governors of the Federal Reserve System[1] (collectively, the "Federal Regulators") announced consent cease-and-desist orders ("consent orders") against several large mortgage servicers, including U.S. Bank, pursuant to 12 U.S.C. § 1818(b).  The consent orders, in broad terms, sought to correct unsafe and unsound practices related to residential mortgage loan servicing and foreclosure processing and to provide some remediation for borrowers injured by those practices.

The consent orders required the mortgage servicers to take a number of corrective actions, including retaining an independent consultant to conduct a comprehensive review of foreclosure actions from 2009 and 2010.  *See, e.g.*, April 13, 2011 Consent Order against U.S. Bank ("U.S. Bank Consent Order") (Doc. 77-1, Exh. 1).[2]    Eligible borrowers—those who had a pending or completed

---

[1] The former Office of Thrift Supervision was also involved in these enforcement actions, but its functions have now been transferred to the Board of Governors and the Comptroller of the Currency.  *See* 12 U.S.C. § 5412.

[2] While we normally limit our review of a grant of a motion to dismiss to the complaint and its attachments, *see Reese v. Ellis, Painter, Ratterree & Adams, LLP*, 678 F.3d 1211, 1215–16 (11th Cir. 2012), we may consider two of the documents attached to the Federal Regulators' motion to dismiss—the consent order against U.S. Bank and its later amendment—because they are central to Plaintiffs' claims and their authenticity is not disputed, *see Day v. Taylor*, 400 F.3d 1272, 1276 (11th Cir. 2005).

3

foreclosure on their primary residence during that time—could request an independent review of their file and receive compensation identified financial injury.  This process was known as Independent Foreclosure Review ("IFR").

In June 2012, the Federal Regulators published the "Financial Remediation Framework" (the "IFR Framework") to help independent consultants recommend remediation for financial injury identified during the IFR.[3]  The IFR Framework provides examples of situations where compensation or other remediation, such as correction of credit records, is required, and it specifies the remedies applicable to each situation.  The servicers were to develop remediation plans, subject to approval by the Federal Regulators, based on the recommendations of the independent consultants.

In February 2013, the Federal Regulators issued amendments to the consent orders that significantly changed the remediation process.[4]  The amendments were based on agreements reached one month earlier between the Federal Regulators and the servicers, including U.S. Bank.  The participating servicers agreed to pay $9.3 billion to eligible borrowers, including $3.6 billion in direct cash payments and $5.7 billion in other assistance, such as loan modifications and forgiveness of

_____

[3] Plaintiffs attached the IFR Framework, apart from its cover page, to their amended complaint.    The full version is available through the Federal Reserve website at https://www.federalreserve.gov/newsevents/press/bcreg/bcreg20120621b2.pdf (last visited July 20, 2016).

[4] Most, but not all, of the servicers subject to the original consent orders agreed to the amendments.  Servicers who did not agree to the amendments remained under the IFR process.

deficiency judgments.  The $3.6 billion was to be paid out to eligible borrowers from a Qualified Settlement Fund (the "Settlement Fund") by a paying agent, Rust Consulting, Inc.

The amendments terminated the case-by-case IFR process and, in its place, outlined a more streamlined process to provide remediation to eligible borrowers. *See, e.g.*, Amendment to April 13, 2011 Consent Order against U.S. Bank ("2013 Amendment"), Art. I, § (1) (Doc. 77-1, Exh. 2).  Servicers would place eligible borrowers into categories, based on loan-file characteristics as determined by the Federal Regulators, *id.*, Art. II, § (1), and Federal Regulators would develop a distribution plan, in their sole discretion, specifying the amounts applicable to each borrower category, *id.*, Art. II, §§ (2) & (3).  Based on the distribution plan and the servicers' categorization of borrowers, Rust Consulting would distribute payments from the Settlement Fund to individual eligible borrowers.  *Id.*  Plaintiffs have submitted with their amended complaint a table specifying the standard payout amounts for various categories of borrowers from the Settlement Fund (the "Settlement Fund Table").  *See* Amended Compl., Exh. 2 (Doc. 69 at 17).[5]

Notably, the cash payments to eligible borrowers were not meant to "reflect specific financial injury or harm that may have been suffered by borrowers

---

[5] What appears to be the same table is also available through the Federal Reserve website at   https://www.federalreserve.gov/newsevents/press/bcreg/bcreg20130409a1.pdf   (last visited July 20, 2016).

receiving payments."  2013 Amendment at 2–3.  Nor was remediation from the Settlement Fund intended to displace any independent claims a borrower may have against his or her servicer.  *See id.*, Art. V, § (3) ("In no event shall the Bank request or require any borrower to execute a waiver of any claims against the Bank (including any agent of the Bank) in connection with any payment or Foreclosure Prevention assistance pursuant to this Amendment to the Consent Order.").

With this general background in mind, we turn to Plaintiffs' specific allegations in this case.

## II.

Ferrer and Aluart are both eligible borrowers under the terms of the U.S. Bank Consent Order and 2013 Amendment.  They both received a cash payment from Rust Consulting.  They allege, however, that they received less than they were owed under the IFR Framework and the Settlement Fund Table, which we collectively, though loosely, refer to as the "payout plans."[6]

According to the operative amended complaint, Ferrer and U.S. Bank reached a loan-modification agreement after U.S. Bank had filed to foreclose

---

[6] While Plaintiffs exclusively referenced the IFR Framework in their allegations, the payments they received were from the Settlement Fund after the termination and replacement of the IFR process and, implicitly, the IFR Framework.  They also attached the Settlement Fund Table to their amended complaint.  Thus, their claims appear to be based primarily on the 2013 Amendment and the Settlement Fund Table.  In any case, it makes no legal difference whether their claims are based on the IFR Framework, the Settlement Fund Table, or both.  Given their explicit references to the IFR Framework, we construe their allegations as broadly referring to both payout plans.

Ferrer's mortgage. Under the agreement, U.S. Bank promised to give Ferrer a permanent loan modification and to withdraw the foreclosure action if she successfully completed a six-month trial modification period. While Ferrer completed the trial modification period, U.S. Bank did not convert her trial modification into a permanent one, though it did withdraw the foreclosure action. Citing the payout plans, Ferrer claims that she was entitled to $5,000, suspension of foreclosure, permanent loan modification, and correction of servicer and credit records. In April 2013, Ferrer received a $2,000 check from Rust Consulting.

For his part, Aluart alleged that U.S. Bank sold his home at a foreclosure sale in July 2010 after he had filed for bankruptcy protection. The sale was later rescinded by the bankruptcy court. Citing the payout plans, he claims that he was entitled to $31,250, trial loan modification, and correction of servicer and credit records. Aluart received a $6,000 check from Rust.

Count I of Plaintiffs' amended complaint alleged that the Federal Regulators and Rust Consulting violated the Florida Deceptive and Unfair Trade Practices Act ("FDUTPA") by publishing the payout plans but failing to comply with their terms. Count II alleged that all Defendants committed the offense of "civil theft." Count III alleged that Rust Consulting breached a fiduciary duty by failing to comply with the payout plans. Count IV alleged that the Federal Regulators were negligent in overseeing the distribution of cash payments from the Settlement

7

Fund.  For relief, Plaintiffs requested injunctive relief they claim was "mandated" by the payout plans (such as loan modification), a declaration of wrongdoing on all four counts, and compensatory damages in the amount of the difference between what they received from Rust Consulting and what they claim they were owed.

Defendants filed separate motions to dismiss, arguing, in relevant part, that the district court lacked subject-matter jurisdiction over Plaintiffs' claims.  In Defendants' view, a judicial-review provision in 12 U.S.C. § 1818, the statute under which the U.S. Bank Consent Order and 2013 Amendment were issued, precluded Plaintiffs from challenging any actions taken pursuant to those orders.  Specifically, § 1818(i)(1) provides that, outside of narrow circumstances, "no court shall have jurisdiction to affect by injunction or otherwise the issuance or enforcement of any notice or order under [§ 1818], or to review, modify, suspend, terminate, or set aside any such notice or order."  Plaintiffs disputed that § 1818(i)(1) applied, characterizing their claims as based on the payout plans alone, which, Plaintiffs asserted, were not orders under § 1818.

A magistrate judge prepared a report and recommendation for the district court, concluding that § 1818(i)(1) deprived the court of jurisdiction over Plaintiffs' claims.  The magistrate judge found that the court could not review the U.S. Bank Consent Order, the 2013 Amendment, or the actions of Defendants taken pursuant to either of those orders.  The district court adopted the magistrate

judge's recommendation over Plaintiffs' objections.    Plaintiffs now bring this appeal, for which we appointed counsel.[7]

## III.

Plaintiffs first argue that the district court abused its discretion by denying their motion for appointment of counsel filed early on in the case.  A magistrate judge denied their motion, and Plaintiffs did not ask the district court to review the order by objecting to it.  On appeal, Plaintiffs contend that their case presented exceptional circumstances warranting appointment of counsel and that the court improperly justified the denial on a lack of funds to appoint counsel in civil cases.

While we generally review the denial of a motion for appointment of counsel for an abuse of discretion, *Dean v. Barber*, 951 F.2d 1210, 1216 (11th Cir. 1992), "where a party fails to timely challenge a magistrate's nondispositive order before the district court, the party waived his right to appeal those orders in this Court," *Smith v. Sch. Bd. of Orange Cty.*, 487 F.3d 1361, 1365 (11th Cir. 2007), Fed. R. Civ. P. 72(a) (objections must be filed within fourteen days of service of the order).  *Cf. United States v. Schultz*, 565 F.3d 1353, 1359, 1361–62 (11th Cir. 2009) (holding that we lack jurisdiction to hear appeals directly from federal magistrate judges).  Here, because Plaintiffs did not timely object to the magistrate

---

[7] We note that the only remaining claims appear to be against Rust Consulting for breach of fiduciary duty and a violation of the FDUTPA.  In their response to the motions to dismiss, Plaintiffs abandoned their civil-theft claim, which was the sole claim clearly raised against U.S. Bank.  Further, on April 11, 2016, we granted the parties' joint motion to dismiss with prejudice the claims against the Federal Regulators.

9

judge's order denying appointment of counsel, *see Schultz*, 565 F.3d at 1357–59 (holding that orders regarding representation are non-dispositive), we will not consider the issue on appeal, *see Smith*, 487 F.3d at 1365.

Plaintiffs respond that their failure to object should be excused because they were proceeding *pro se* and they did not receive notice of their need to object to the magistrate judge's order.  However, we have held that such notice is not required for non-dispositive orders, even if it may be required for dispositive recommendations, *Schultz*, 565 F.3d at 1361–62, and we have required *pro se* parties to comply with the requirements of Rule 72(a), *see Smith*, 487 F.3d at 1365–66 (holding that a *pro se* litigant waived his right to appellate review of a magistrate's non-dispositive order by not objecting to the order before the district court, as required by Rule 72(a)), *Farrow v. West*, 320 F.3d 1235, 1249 n.21 (11th Cir. 2003) (same).  Therefore, we do not consider the merits of Plaintiffs' request for counsel in the district court.

## IV.

As for the dismissal of Plaintiffs' amended complaint, the district court concluded that § 1818(i)(1) prevented the court from exercising jurisdiction over Plaintiffs' claims.  We review *de novo* questions of statutory interpretation, *United States v. Maupin*, 520 F.3d 1304, 1306 (11th Cir. 2009), and of the subject-matter

jurisdiction of the district court, *Gupta v. McGahey*, 709 F.3d 1062, 1064–65 (11th Cir. 2013).

Section 1818(b) gives federal banking agencies the power to initiate administrative proceedings culminating in cease-and-desist orders against depository institutions engaged in, or about to engage in, unsafe, unsound, or unlawful practices. 12 U.S.C. § 1818(b)(1); *Bd. of Governors of Fed. Reserve Sys. v. MCorp. Fin., Inc.*, 502 U.S. 32, 38, 112 S. Ct. 459, 463 (1991). There is no dispute that the U.S. Bank Consent Order and 2013 Amendment in this case are orders under § 1818(b).

Federal district courts' ability to review or enforce cease-and-desist orders under § 1818 is strictly limited by statute. Judicial review in the district court is available in two situations.[8] *See MCorp Fin.*, 502 U.S. at 38, 112 S. Ct. at 463. First, a party may seek an injunction to block enforcement of a temporary cease-and-desist order pending completion of the related administrative proceeding. *See* 12 U.S.C. § 1818(c)(2). Second, federal banking agencies, in their discretion, may apply to an appropriate district court for enforcement of a notice or order issued under § 1818. *See* 12 U.S.C. § 1818(i)(1).

Beyond these two limited situations, however, district courts lack jurisdiction "to affect by injunction or otherwise the issuance or enforcement of

---

[8] Additionally, 12 U.S.C. § 1818(h) authorizes an appropriate court of appeals to review final orders directly on the application of an aggrieved party.

11

any notice or order under [§ 1818], or to review, modify, suspend, terminate, or set aside any such notice or order."[9]  12 U.S.C. § 1818(i)(1); *see Henry v. Office of Thrift Supervision*, 43 F.3d 507, 513 (10th Cir. 1994) ("In § 1818(i) Congress . . . explicitly preclud[ed] jurisdiction in any situation except where it had specifically provided for a particular court to exercise jurisdiction.").  Here, it is clear that this case does not fit into either of the two situations where district courts have been granted jurisdiction over § 1818 orders.  Accordingly, the jurisdictional bar of § 1818(i)(1) comes into play.

Nevertheless, despite the "plain, preclusive language" of § 1818(i)(1), *MCorp. Fin.*, 502 U.S. at 39, 112 S. Ct. at 463, that provision does not appear to prevent courts from adjudicating claims based on substantive laws solely because a federal banking agency has taken similar or parallel actions.  *Cf.* 2013 Amendment, Art. V, § (3) (Doc. 77-1, Exh. 2) ("In no event shall the Bank request or require any borrower to execute a waiver of any claims against the Bank (including any agent of the Bank) in connection with any payment or Foreclosure Prevention

---

[9] 12 U.S.C. § 1818(i)(1), in its entirety, states,

> The appropriate Federal banking agency may in its discretion apply to the United States district court, or the United States court of any territory, within the jurisdiction of which the home office of the depository institution is located, for the enforcement of any effective and outstanding notice or order issued under this section or under section 1831o or 1831p-1 of this title, and such courts shall have jurisdiction and power to order and require compliance herewith; but except as otherwise provided in this section or under section 1831o or 1831p-1 of this title no court shall have jurisdiction to affect by injunction or otherwise the issuance or enforcement of any notice or order under any such section, or to review, modify, suspend, terminate, or set aside any such notice or order.

12

assistance pursuant to this Amendment to the Consent Order."). In other words, if a plaintiff could bring an action against his or her servicer before the issuance of a cease-and-desist order under § 1818, that plaintiff likely could bring such an action after the issuance of such an order. *See, e.g.*, *In re JPMorgan Chase Mortg. Modification Litig.*, 880 F. Supp. 2d 220, 231-34 (D. Mass. 2012) (stating that, by enacting § 1818(i)(1), "Congress did not intend to also prohibit non-parties from exercising their separate remedies at law"). But an order issued under § 1818 cannot be the basis for a cause of action by a non-party to the order. *Cf.* U.S. Bank Consent Order, Art. XIII § (10) (Doc. 77-1, Exh. 1) ("Nothing in the Stipulation and Consent or this Order, express or implied, shall give to any person or entity, other than the parties hereto . . . any benefit or any legal or equitable right, remedy or claim under the Stipulation and Consent or this Order."); 2013 Amendment, Art. VII § (8) (Doc. 77-1, Exh. 2) (using nearly identical language).

Here, the district court properly concluded that it lacked jurisdiction to address and resolve Plaintiffs' claims because they are based on orders issued under § 1818. *See* 12 U.S.C. § 1818(i)(1). Plaintiffs' amended complaint challenged the implementation and oversight of the remediation schemes arising out of the administrative cease-and-desist proceedings initiated by the Federal Regulators under § 1818. Specifically, Plaintiffs claimed that Defendants failed to follow the payout plans (the IFR Framework and the Settlement Fund Table) and

13

that Plaintiffs were entitled to the relief supposedly mandated by those plans. Though Plaintiffs attempt to distinguish the payout plans from the orders issued under § 1818, the U.S. Bank Consent Order and 2013 Amendment, the payout plans are part and parcel of those orders. Any rights to remediation, and the attendant responsibilities in determining the remediation owed individual borrowers (such as classifying eligible borrowers and developing a distribution plan), were created by the § 1818 orders; the payout plans simply specify the amount of remediation due various categories of borrowers. In essence, Plaintiffs' allegations amount to a claim that Defendants breached their duties under the § 1818 orders against U.S. Bank.

Because Plaintiffs effectively seek enforcement of the U.S. Bank Consent Order and 2013 Amendment through the payout plans, resolving Plaintiffs' claims would necessarily "affect . . . the . . . enforcement" of orders issued under § 1818, something "no court shall have jurisdiction" to do outside of an enforcement action by federal banking agencies. *See* 12 U.S.C. § 1818(i)(1). For the same reasons, Plaintiffs also cannot use the § 1818 orders and payout plans as a basis for a FDUTPA claim. *See Newton v. Am. Debt Servs., Inc.*, 75 F. Supp. 3d 1048, 1058–62 (N.D. Cal. 2014) (holding that a plaintiff could not "borrow" a § 1818 order as predicate authority for imposing liability under a similar state statute).

14

Nor have Plaintiffs raised any claims against U.S. Bank, their former mortgage servicer, independent of the § 1818 orders.  While counsel for Plaintiffs now suggests that, had Plaintiffs been appointed counsel in the district court, they could have brought an independent cause of action against U.S. Bank for breach of contract relating to the loan modification, Plaintiffs expressly abandoned such a theory in response to U.S. Bank's motion to dismiss, which raised that possibility. In particular, Plaintiffs clarified that their claims against U.S. Bank were based solely on the payout plans and not on the modification agreement.  Accordingly, we will not revive this claim on appeal even though Plaintiffs were proceeding *pro se*.[10]

In sum, the district court properly found that § 1818(i)(1) divested the court of jurisdiction over Plaintiffs' claims.

## V.

For the foregoing reasons, we agree with the district court that it lacked subject-matter jurisdiction over Plaintiffs' amended complaint.  Accordingly, the judgment of the district court is **AFFIRMED**.

---

[10] In addition, the district court noted that Ferrer had filed a separate lawsuit against U.S. Bank alleging breach of contract.

15