NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 22-3046
_____

In re: 710 LONG RIDGE ROAD OPERATING COMPANY II, LLC, et al.,
Debtors


NATIONAL LABOR RELATIONS BOARD,
Appellant
_____

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY
(D.C. Civ. Action Nos. 2-14-cv-01725, 2-14-cv-01726, 2-14-cv-02057,
2-14-cv-02058, 2-14-cv-02353, 2-14-cv-02354)
District Judge: Honorable Julien X. Neals
_____

Argued
January 24, 2023
_____

Before: GREENAWAY, JR., BIBAS, and FUENTES, *Circuit Judges*.

(Opinion Filed: April 27, 2023)
_____

OPINION*
_____

---

* This disposition is not an opinion of the full Court and pursuant to I.O.P. 5.7
does not constitute binding precedent.

Jennifer A. Abruzzo
Peter Sung Ohr
Nancy E. Kessler Platt
Dawn L. Goldstein
Paul A. Thomas
Andrew J. Ziaja      **[ARGUED]**
National Labor Relations Board
1015 Half Street, S.E.
Washington, DC 20570

Julie I. Kaufman
National Labor Relations Board
Region 22
20 Washington Place
5th Floor
Newark, NJ 07102
        *Attorneys for Appellant*

Michael D. Sirota    **[ARGUED]**
Cole Schotz
25 Main Street
Court Plaza North, P.O. Box 800
Hackensack, NJ 07601

Ryan T. Jareck
Cole Schotz
1325 Avenue of the Americas
19th Floor
New York, NY 10019
        *Attorneys for Appellees*

GREENAWAY, JR., *Circuit Judge*.

This appeal emerges from nearly ten years of litigation surrounding the labor

practices and bankruptcy of several skilled nursing facilities.  Though the procedural

history and underlying facts are complex, the question before us is simple: did the

District Court err when it entered a preliminary injunction against the National Labor

Relations Board ("NLRB").[1]

The preliminary injunction was entered in a bankruptcy appeal pending before the District Court. The appeal arose from the NLRB's efforts to seek review of several orders entered by the Bankruptcy Court, including the order confirming the reorganization plan ("the Plan") of several skilled nursing facilities.[2] Basing the preliminary injunction on its interpretation of various provisions of the Plan, the District Court's order restrained the NLRB from "investigating, pursuing, or otherwise prosecuting the Released Claims against the Releasees."[3] Dist. Ct. Ord. of October 26,

---

[1] The National Labor Relations Act (NLRA), as amended, separates the NLRB's prosecutorial and adjudicatory functions. The NLRA establishes the position of General Counsel and vests him or her with "final authority, on behalf of the Board, in respect of the investigation of [unfair labor practice] charges and issuance of complaints . . . , and in respect of the prosecution of such complaints before the Board." 29 U.S.C. § 153(d). Section 153(a) creates a five-member Board, which is empowered by § 160(a), to adjudicate unfair labor practice complaints brought by the General Counsel.

For these reasons, where this opinion refers to "the NLRB," it means the agency acting in its prosecutorial role through the General Counsel. Where it refers to "the Board," it means the five-member adjudicative body established by Congress to decide cases under the NLRA.

[2] The facilities are 710 Long Ridge Road Operating Company II, LLC, 240 Church Street Operating Company II, LLC, 1 Burr Road Operating Company II, LLC, 245 Orange Avenue Operating Company II, LLC and 107 Osborne Street Operating Company II, LLC, (collectively "Appellees").

[3] As identified by Appellees in connection with the application for a preliminary injunction, the Releasees include "Care One, LLC, Care Realty, HealthBridge Management, LLC, and the affiliated landlords." DDE 128-18 at 13. Prior to adoption of the Plan, Care Realty was the indirect parent company of the Appellees.

2022 at 2 (DDE 203).  As we explain below, the District Court erred in its interpretation of the specific terms of the Plan.  We therefore vacate the preliminary injunction.

## A.  Facts and background

For purposes of this appeal, we will summarize the events of this decade-old litigation relevant to the issues at hand.

In 2012, the NLRB began administrative proceedings against Appellees, alleging that Appellees engaged in unfair labor practices.  The following year, citing unsustainable labor costs arising from collective bargaining agreements (CBAs) with their unionized workforce, Appellees filed for bankruptcy protection pursuant to Chapter 11.

On October 22, 2013, Appellees filed a proposed reorganization plan.  The proposed plan included several third-party releases and related injunctions.  As relevant here, the NLRB objected to the third-party releases in the proposed plan, arguing that the Bankruptcy Court lacked subject-matter jurisdiction to enjoin the NLRB's administrative proceedings.  In response to this objection, and as relevant here, Appellees offered a revision – the language now contained in § 9.4 of the Plan.  Section 9.4 of the Plan states that:

> Subject to all provisions of this Article IX, including the releases, neither this Section 9.4 of the Plan nor any Confirmation Order shall operate as an injunction with respect to, or otherwise limit or enjoin, the NLRB's rights under the NLRA and any exclusive jurisdiction thereunder to fix a claim against any Releasee in the ALJ Proceedings.

BDE 899 at 8.

4

After additional negotiations not relevant here, the Bankruptcy Court confirmed the Plan on March 6, 2014. In the opinion confirming the Plan, the Bankruptcy Court observed that, "[w]hile the Plan in its original form may have been read to enjoin the NLRB's rights to fix a claim against any Releasee in the ALJ proceedings, the Debtors' second modifications to the Plan clarify that the Third-Party Releases are not meant to function in this manner." BDE 983 at 24. The NLRB filed a timely appeal, seeking review of the Plan, as well as various other orders entered by the Bankruptcy Court.

While the bankruptcy proceeding moved ahead, so did the NLRB administrative proceedings before the administrative law judge (ALJ). However, in 2014, those administrative proceedings were stayed, pending disposition of an interlocutory appeal to the Board. The stay was lifted in 2019 when the Board denied that appeal, thus prompting the proceedings before the ALJ to resume.

Before the ALJ, the administrative proceedings were bifurcated. "[T]he parties agreed to present the evidence regarding the joint and single employer allegations after presenting their evidence regarding the other allegations in the complaint." DDE 128-13 at n.1. When the NLRB issued third-party subpoenas seeking information in support of the NLRB's pursuit of the joint/single employer allegations in the complaint, Appellees objected. Unable to convince the NLRB to withdraw the subpoenas, Appellees sought a preliminary injunction before the District Court, where the bankruptcy appeal was still pending.

Appellees sought to enjoin the NLRB from pursuing Released Claims against Care

5

Realty. Hours after the ALJ ordered compliance with the subpoenas, the District Court issued a preliminary injunction. The preliminary injunction provided in relevant part "that the NLRB, be and hereby is preliminarily restrained and enjoined pending final adjudication of this matter from investigating, pursuing, or otherwise prosecuting the Released Claims against the Releasees." Dist. Ct. Ord. of October 26, 2022 at 2 (DDE 203).

## B. Jurisdiction and Standard of Review

We have jurisdiction pursuant to 28 U.S.C. § 1292(a). The District Court had jurisdiction over the bankruptcy appeal pursuant to 28 U.S.C. § 158(a). The motion seeking a preliminary injunction was filed as part of the bankruptcy appeal. In the motion seeking the preliminary injunction, Appellees asked the District Court to interpret the Plan. The District Court possessed jurisdiction to interpret the plain text of the Plan. Had the District Court interpreted the plain text of that Plan correctly, it would have found that it could not enjoin the agency.

Before us, the NLRB argues that the District Court lacked jurisdiction to enter the preliminary injunction. The NLRB's argument rests on its assertion that, pursuant to 29 U.S.C. § 160, the Bankruptcy Court lacked jurisdiction to enjoin the administrative proceedings pending before the ALJ. The NLRB's argument continues by positing that the District Court lacked jurisdiction over this case because ordinary bankruptcy jurisdiction does not "allow[ ] interference with ongoing unfair labor practice cases." Appellant's Br. at 34-35. Essentially, the NLRB asserts that no federal court—neither the

6

Bankruptcy Court nor the District Court—has jurisdiction to enjoin administrative proceedings pending before an ALJ.

The NLRB's argument ignores the underlying facts of this case. As we noted above, the NLRB expressed its concerns about the Bankruptcy Court's jurisdiction when the NLRB objected to the proposed reorganization plan. Appellees offered a modification to the draft plan to address this concern. The Bankruptcy Court acknowledged this response to the NLRB's jurisdictional objections in the opinion confirming the Plan. As we explain below, nothing in the Plan approved by the Bankruptcy Court enjoined the NLRB or prevented it from pursuing the administrative proceedings. Therefore, the NLRB's arguments regarding the impact of 29 U.S.C. § 160 and cases interpreting that statute are misplaced.[4]

"When reviewing a district court's grant of a preliminary injunction, we review

---

[4] Judge Bibas would vacate the preliminary injunction and remand with instructions to dismiss the Debtors' request for injunctive relief for lack of jurisdiction. The National Labor Relations Act gives the NLRB "exclusive" jurisdiction over unfair-labor-practice proceedings. *Myers v. Bethlehem Shipbuilding Corp.*, 303 U.S. 41, 48 (1938); *see* 29 U.S.C. § 160(a). And courts sitting in bankruptcy lack jurisdiction over proceedings that are committed to the exclusive jurisdiction of an administrative agency. *See Bd. of Governors of Fed. Rsrv. Sys. v. MCorp Fin., Inc.*, 502 U.S. 32, 41–42 (1991). So, he reasons, the District Court "erred when it held that it had jurisdiction to consider the merits" of Care Realty's challenge to the NLRB's unfair-labor-practice proceeding. *Id.* at 44.

The majority says that the NLRB's jurisdictional challenge misses the mark because there was nothing in the Confirmation Plan that would merit an injunction anyway. But according to Judge Bibas, that puts the cart before the horse. Courts must consider their jurisdiction to entertain a challenge before opining on its merits. *See Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 93–110 (1998).

the court's findings of fact for clear error, its conclusions of law de novo, and the ultimate decision granting the preliminary injunction for an abuse of discretion." *Mallet and Co. Inc. v. Lacayo*, 16 F.4th 364, 379 n.17 (3d Cir. 2021) (quoting *Bimbo Bakeries USA, Inc. v. Botticella*, 613 F.3d 102, 109 (3d Cir. 2010)).

## C. Analysis

In reviewing an application for a preliminary injunction, we apply a four-factor test. First, the moving party must demonstrate a likelihood of success on the merits of its claim. Second, there must be a showing of irreparable harm, should the preliminary injunction be denied. "Absent either of those threshold factors, '[w]e cannot sustain a preliminary injunction ordered by the district court[.]'" *Id.* at 380 (quoting *Hoxworth v. Blinder, Robinson & Co., Inc.*, 903 F.2d 186, 197 (3d Cir. 1990)). If the first two factors are established, we turn to the final two factors: "whether granting relief will result in even greater harm to the nonmoving party or other interested persons and whether the public interest favors such relief." *Id.* Notably, the last two "factors merge when the Government is the opposing party." *Nken v. Holder*, 556 U.S. 418, 435 (2009). After evaluating all four factors, we finally determine "whether the balance of all four factors warrants granting preliminary relief." *Mallet*, 16 F.4th at 380.

With respect to likelihood of success on the merits, the District Court found "that Appellees have demonstrated a likelihood of success on the merits on the basis that: (i) the Releasees, including Care Realty, have been released from the Released Claims, including claims based on joint employer, single employer, and single integrated

8

enterprise theories, pursuant to the Plan; and (ii) the NLRB lacks the ability to unilaterally act to determine that Care Realty is in violation of the Plan given the ongoing and well-documented dispute concerning Care Realty's obligations under the Plan." Dist. Ct. Op. of October 26, 2022 at 29 (DDE 202).

We find that the District Court's reasoning fails at the first factor – likelihood of success on the merits. Appellees assert that they are likely to succeed because the NLRB's argument that the Confirmation Plan allows the NLRB to fix claims will fail. According to Appellees, this is because "the NLRB's efforts go well beyond what is necessary for the NLRB to *fix* its Backpay Claim against the Appellees for purposes of determining its distribution under the Plan." Appellees' Br. at 39.

In light of the broad language of § 9.4, we conclude that nothing in the Plan enjoins the NLRB from moving forward with the administrative proceedings before the ALJ. In their argument, Appellees modify the language of the Plan by inserting "Backpay" before "claim" to suggest that only certain claims brought by the NLRB are protected from the Releases. The plain language of § 9.4 creates no such limitation. Instead, § 9.4 states that nothing shall serve to enjoin the NLRB's efforts "to fix a claim against any Releasee in the ALJ Proceedings." BDE 899 at 8. Lacking any modifier regarding the term "claim," Appellees' attempt to avoid the broad language of § 9.4 must fail.

Fixing a claim is exactly what the NLRB is attempting to do in the administrative proceeding. The subpoenas seek information that the NLRB believes is necessary to

9

support its arguments with respect to the joint/single employer allegations. Section 9.4 allows the NLRB to proceed in its efforts to resolve that issue. The District Court failed to address the impact of § 9.4, and, in doing so, legally erred.

Since "a court of appeals must reverse if the district court has proceeded on the basis of an erroneous view of the applicable law," *Mallet*, 16 F.4th at 379 n.17 (quoting *Kos Pharms., Inc. v. Andrx Corp.*, 369 F.3d 700, 708 (3d Cir. 2004)), we are compelled to reverse the District Court's decision here, and consequently vacate the preliminary injunction.

## D. Conclusion

For the foregoing reasons, we will vacate the preliminary injunction.